CALIFANO, SECRETARY OF HEALTH, EDUCATION, AND WELFARE v. TORRES

No. 77–88.   Decided February 27, 1978*

PER CURIAM.

Certain benefits under the Social Security Act, as amended in 1972, are payable only to residents of the United States, defined as the 50 States and the District of Columbia. The District Court for the District of Puerto Rico held in these

*Together with No. 77–126, *Califano, Secretary of Health, Education, and Welfare* v. *Colon et al.*, also on appeal from the same court.

1

cases that this geographic limitation is unconstitutional as applied to persons who upon moving to Puerto Rico lost the benefits to which they were entitled while residing in the United States. The Secretary of Health, Education, and Welfare, responsible for the administration of the Social Security Act, has appealed.[1]

## I

One of the 1972 amendments to the Social Security Act created a uniform program, known as the Supplemental Security Income (SSI) program, for aid to qualified aged, blind, and disabled persons. 86 Stat. 1465, 42 U. S. C. § 1381 *et seq.* (1970 ed., Supp. V). This federally administered program replaced the federal-state programs of Old Age Assistance, 49 Stat. 620, 42 U. S. C. § 301 *et seq.;* Aid to the Blind, 49 Stat. 645, 42 U. S. C. § 1201·*et seq.;* Aid to the Disabled, 64 Stat. 555, 42 U. S. C. § 1351 *et seq.;* and Aid to the Aged, Blind, and Disabled, 42 U. S. C. § 1381 *et seq.*

The exclusion of Puerto Rico in the amended program is apparent in the definitional section. Section 1611 (f) of the Act, as set forth in 42 U. S. C. § 1382 (f) (1970 ed., Supp. V), states that no individual is eligible for benefits during any month in which he or she is outside the United States. The Act defines "the United States" as "the 50 States and the District of Columbia." § 1614 (e), as set forth in 42 U. S. C. § 1382c (e) (1970 ed., Supp. V). The repeal of the pre-existing programs did not apply to Puerto Rico. Thus persons in Puerto Rico are not eligible to receive SSI benefits, but are eligible to receive benefits under the pre-existing programs.[2]

Appellee Torres received SSI benefits while residing in Connecticut; the benefits were discontinued when he moved

---

[1] This Court's jurisdiction is based on 28 U. S. C. § 1252.

[2] The SSI benefits are significantly larger.

to Puerto Rico. Similarly, appellees Colon and Vega received benefits as residents of Massachusetts and New Jersey, respectively, but lost them on moving to Puerto Rico.[3]

Torres filed a complaint in the District Court of Puerto Rico claiming that the exclusion of Puerto Rico from the SSI program was unconstitutional, and a three-judge court was convened to adjudicate the suit. Viewing the geographic limitations in the law as an interference with the constitutional right of residents of the 50 States and the District of Columbia to travel, the court searched for a compelling governmental interest to justify such interference. Finding none, the court held §§ 1611 (f) and 1614 (e) unconstitutional as applied to Torres. *Torres* v. *Mathews,* 426 F. Supp. 1106.[4] Soon after that decision appellees Colon and Vega also sued in the Puerto Rico District Court. Relying on the *Torres* decision, a single judge enjoined the Social Security Administration from discontinuing their SSI benefits on the basis of their change of residency to Puerto Rico.[5]

---

[3] The record does not show whether the appellees applied for benefits under the pre-existing programs while in Puerto Rico.

[4] The complaint had also relied on the equal protection component of the Due Process Clause of the Fifth Amendment in attacking the exclusion of Puerto Rico from the SSI program. Acceptance of that claim would have meant that all otherwise qualified persons in Puerto Rico are entitled to SSI benefits, not just those who received such benefits before moving to Puerto Rico. But the District Court apparently acknowledged that Congress has the power to treat Puerto Rico differently, and that every federal program does not have to be extended to it. Puerto Rico has a relationship to the United States "that has no parallel in our history." *Examining Board* v. *Flores de Otero,* 426 U. S. 572, 596 (1976). Cf. *Balzac* v. *Porto Rico,* 258 U. S. 298 (1922); *Dorr* v. *United States,* 195 U. S. 138 (1904); *Downes* v. *Bidwell,* 182 U. S. 244 (1901). See Leibowitz, The Applicability of Federal Law to the Commonwealth of Puerto Rico, 56 Geo. L. J. 219 (1967); Hector, Puerto Rico: Colony or Commonwealth?, 6 N. Y. U. J. Int'l L. & Pol. 115 (1973).

[5] The opinion of the District Court is unreported.

## II

In *Shapiro* v. *Thompson*, 394 U. S. 618 (1969), and *Memorial Hospital* v. *Maricopa County*, 415 U. S. 250 (1974), this Court held that laws prohibiting newly arrived residents in a State or county from receiving the same vital benefits as other residents unconstitutionally burdened the right of interstate travel. As the Court said in *Memorial Hospital,* "the right of interstate travel must be seen as insuring new residents the same right to vital governmental benefits and privileges in the States to which they migrate as are enjoyed by other residents." *Id.,* at 261.

In the present cases the District Court altogether transposed that proposition. It held that the Constitution requires that a person who travels to Puerto Rico must be given benefits superior to those enjoyed by other residents of Puerto Rico if the newcomer enjoyed those benefits in the State from which he came. This Court has never held that the constitutional right to travel embraces any such doctrine, and we decline to do so now.[6] Such a doctrine would apply with equal force to any benefits a State might provide for its residents, and would require a State to continue to pay those benefits indefinitely to any persons who had once resided there. And the broader implications of such a doctrine in other areas of substantive law would bid fair to destroy the independent power of each

---

[6] The constitutional right of interstate travel is virtually unqualified. *United States* v. *Guest,* 383 U. S. 745, 757–758 (1966); *Griffin* v. *Breckenridge,* 403 U. S. 88, 105–106 (1971). By contrast the "right" of international travel has been considered to be no more than an aspect of the "liberty" protected by the Due Process Clause of the Fifth Amendment. *Kent* v. *Dulles,* 357 U. S. 116, 125 (1958); *Aptheker* v. *Secretary of State,* 378 U. S. 500, 505–506 (1964). As such this "right," the Court has held, can be regulated within the bounds of due process. *Zemel* v. *Rusk,* 381 U. S. 1 (1965). For purposes of this opinion we may assume that there is a virtually unqualified constitutional right to travel between Puerto Rico and any of the 50 States of the Union.

State under our Constitution to enact laws uniformly applicable to all of its residents.

If there ever could be a case where a person who has moved from one State to another might be entitled to invoke the law of the State from which he came as a corollary of his constitutional right to travel, this is surely not it. For we deal here with a constitutional attack upon a law providing for governmental payments of monetary benefits. Such a statute "is entitled to a strong presumption of constitutionality." *Mathews v. De Castro,* 429 U. S. 181, 185 (1976). "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Jefferson v. Hackney,* 406 U. S. 535, 546 (1972). See also *Califano v. Jobst,* 434 U. S. 47, 53–54; *Califano v. Goldfarb,* 430 U. S. 199, 210 (1977); *Helvering v. Davis,* 301 U. S. 619, 640 (1937).[7]

The judgments are reversed.

*So ordered.*

MR. JUSTICE BRENNAN would affirm.

MR. JUSTICE MARSHALL would note probable jurisdiction and set these cases for oral argument.

---

[7] At least three reasons have been advanced to explain the exclusion of persons in Puerto Rico from the SSI program. First, because of the unique tax status of Puerto Rico, its residents do not contribute to the public treasury. Second, the cost of including Puerto Rico would be extremely great—an estimated $300 million per year. Third, inclusion in the SSI program might seriously disrupt the Puerto Rican economy. Department of Health, Education, and Welfare, Report of the Undersecretary's Advisory Group on Puerto Rico, Guam and the Virgin Islands 6 (Oct. 1976).