Bonifacia CARRASCO, Plaintiff,

v.

SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.

Civ. No. 77–1843.

United States District Court,
D. Puerto Rico.

Jan. 29, 1979.

José E. Colón Santana, Puerto Rico Legal Services, Santurce, P. R., for plaintiff.

Julio Morales Sanchez, U. S. Atty., for defendant.

## DECISION AND ORDER

TORRUELLA, District Judge.

Plaintiff is a 40 year old woman applicant for Social Security disability benefits to whom the Secretary has credited with 19 calendar quarters of earnings. Pursuant to 42 U.S.C. § 423(c)(1)(B)(i) in order for Plaintiff to have attained an insured status she would have needed not less than 20 quarters of earnings credited to her. It is Plaintiff's claim that during the years 1973, 1974, and 1975, she, together with her husband, earned $700, $800, and $400 respectively, from the sale of certain livestock. Under this claim this income would qualify as self employment earnings under 42 U.S.C. § 411 so as to allow her to be credited with additional quarters of earnings and thus attain an insured status. However, since the record, most especially the administrative hearing, had established that Plaintiff was mentally incompetent during the years of alleged self employment the Secretary denied Plaintiff any attribution of earnings for said years and accordingly denied any

benefits. The Secretary premised this decision on his interpretation of 42 U.S.C. § 411(a)(5)(A).

The record reflects that Plaintiff and her husband have been living together for over 20 years (Tr. 29) but have only been married since 1974 (Tr. 29).[1] She entered marriage owning several head of cattle which under Puerto Rican law would be considered her personal, or private property, see: Article 1299(1) Civil Code of P.R., 31 L.P.R.A. § 3631(1). However, due to the long extramarital relationship between the two it is quite plausible that as to this livestock Plaintiff's husband had vested community property interest, see: *Caraballo Ramírez v. Acosta,* 104 D.P.R. 474 (1975); *Cruz v. Sucn. Landrau Díaz,* 97 D.P.R. 578 (1969). The record neither refers to, or elaborates on this point nor is it argued by the parties on review. Because of our disposition of this appeal we need not discuss this issue in depth. At the administrative hearing it was the husband's testimony that Plaintiff had been mentally incompetent for about five years. (Tr. 24, 25, 31). Since the hearing was held on November 9, 1976 this would place the onset of Plaintiff's condition at sometime in 1971. Therefore our interpretation of § 411(a)(5)(A) controls for all earnings claimed by Plaintiff.

Plaintiff on review challenges: (1) the constitutionality of § 411(a)(5)(A) because of its gender-based classification, and (2) the standard used by the Secretary in his determination; she contends that § 411(a)(1) rather than 411(a)(5)(A) is the applicable earnings section. The Secretary presents as the sole issue on review whether the administrative decision is supported by substantial evidence as per the standard set in 42 U.S.C. § 405(g).

The challenged statute reads thus:

"If any of the income derived from a trade or business (other than trade or business carried on by a partnership) is community income under community property laws applicable to such income, all of the gross income and deductions attributable to such trade or business shall be treated as the gross income and deductions of the husband unless the wife exercises substantially all of the management and control of such trade or business, in which case all of such gross income and deductions shall be treated as the gross income and deduction of the wife;"

The Secretary's argument is essentially that:

"The use of the term 'husband' and 'wife' in this section does not indicate a statutory preference that earnings be credited to the husband's account but simply provides that the earnings shall be credited to either the husband or the wife depending on which spouse exercised substantially all the management and control." Defendant's Memorandum of Law, p. 5.

Plaintiff on the other hand contends that the Act's community property provisions work a "palpable injustice" upon women wage earners in that it allows women "lesser benefits" on a "more onerous basis." She argues that this disparate treatment, insofar as it is "plainly based upon stereotypical assumptions" of gender-based distinctions, cannot pass constitutional muster. To her the statute must be "reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced, shall be treated alike." Plaintiff's Memorandum of Law p. 6, citing from *Reed v. Reed,* 404 U.S. 71, 76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). She concludes that § 411(a)(5)(A) does not, and must therefore fall under *Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1976); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973).

---

1. The exact date of marriage is not clear. (Tr. 36). Moreover, there is discrepancy between the husband's testimony who first stated he married 20 years ago (Tr. 24) but later corrected this statement. (Tr. 29).

The Social Security Act, and related legislation, has as its genesis and final aim the protection of the family "with basic protection against hardships created by the loss of earnings due to illness or old age." *Mathews v. de Castro*, 429 U.S. 181, 186, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). "The old age and disability insurance aspects of the Social Security system do not purport to be general public assistance laws that simply pay money to those that need it most." *Id.* at p. 185, 97 S.Ct. at p. 434. It is a welfare remedial act couched within the concept of a social insurance program which makes it "basically a statutory insurance policy." *Weinberger v. Salfi*, 422 U.S. 749, 775, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1974). In that this social insurance program resembles a commercial insurance plan it contains a series of statutory requirements of eligibility that determine if a particular individual is covered by the terms of the Act. This eligibility, or coverage, is a basic element of the social security scheme. See: *Califano v. Jobst*, 434 U.S. 47, 52, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977). To this the Act devotes a great amount of extremely detailed attention. Section 411(a)(5)(A) is a part of this eligibility scheme.

Recently many eligibility requirement provisions of the Social Security Act have been subject to some sort of constitutional attack. Some have survived this scrutiny, others have not. Our analysis therefore will examine the community property provisions vis-a-vis the eligibility provisions that have and have not, survived this constitutional scrutiny. Our inquiry must necessarily address two questions: (1) whether the eligibility requirement as spelled out constitutes sex discrimination and (2) whether sufficient governmental interests validate any discrimination found existent. Cf. *Davis v. Passman*, 544 F.2d 865 (C.A.5, 1977).

The first such case in which the Supreme Court had occasion to review a gender-based attack on a Social Security requirement was in *Weinberger v. Wiesenfeld*, supra. Under Section 202(g) of the Act, 42 U.S.C. § 402(g), Social Security survivors' benefits were made available to the widow (surviving mother) but not to the widower (surviving father). The Court invalidated such a distinction as affording to the wife lesser protection of her spouse than would be accorded to the spouse of the husband. No legitimate justification for this distinction was possible since female workers had paid Social Security taxes on the same basis as male workers and were thus entitled to the same protection.

Very similar to *Wiesenfeld* is the Court's decision in *Califano v. Goldfarb*, supra. Here under Section 202(e)(1) of the Act widow survivor benefits were made available to the widow, as a widow, but, accrued to the widower "only if he 'was receiving at least one-half of his support' from his deceased wife." *Id.* 430 U.S. at 201, 97 S.Ct. at 1024. This benefit scheme was invalidated under the same reasons as in *Wiesenfeld*. "Mrs. Goldfarb [had] worked and paid Social Security taxes for 25 years at the same rate as her male colleagues, but because of § 402(f)(1)(D) the insurance protection received by the males was broader than hers." *Goldfarb*, at 208, 97 S.Ct. at 1027. Again such a distinction found no valid justification.

Both *Wiesenfeld* and *Goldfarb* found original authority in *Frontiero v. Richardson*, supra. In *Frontiero*, a male member of the uniformed services could claim his wife as a dependent for the purpose of obtaining increased living and health allowances. A servicewoman could claim her husband as a "dependent" only if he was in fact dependent on her for over one-half of his support, see *id.* 411 U.S. at 679, 93 S.Ct. 1764. The Court, in its analysis, found that the only substantial justification that could be advanced for the above distinction was achieving "administrative convenience." *Id.* at 688–690, 93 S.Ct. 1764. The Court, however, concluded that insofar as the statute's end result was to afford "dissimilar treatment for men and women who are similarly situated" *id.* p. 688, 93 S.Ct. at p. 1771, "administrative convenience" was not a sufficient justification, and thus invalidated the statute.

We hold that these cases are not controlling on the issue before us. Unlike the statutory schemes therein invalidated we have serious reservations if § 411(a)(5)(A) is, in fact, a classification, and, if a classification we disagree that it is sexually discriminating. First, § 411(a)(5)(A) is but a burden of proof requirement which delineates who is to receive credit for self employment wages when local law establishes the presumption that both have earned it. Rather than the gender-based lines of distinction invalidated in *Goldfarb, Wiesenfeld*, and *Frontiero*, § 411(a)(5)(A)'s community provisions more closely resemble the eligibility requirements upheld in *Califano v. Jobst*, supra; *Weinberger v. Salfi*, supra; and *Mathews v. de Castro*, supra.

In *Califano v. Jobst*, supra, a dependent child who was receiving Social Security benefits would have them terminated if he married someone who was not receiving Social Security benefits. If the dependent child married someone who was receiving benefits he himself would continue to receive them. See: 42 U.S.C. § 402(d)(1)(D). The Court after an analysis of the purpose of the social insurance program found that the general rule established by the Statute—that the entitlement to child statutory benefits terminated on marriage—is rational. It found as a reasonable assumption that marital status is a relevant test of probable dependency, a married person being less likely than an unmarried person to be dependent on his parents for support.

Also particularly instructive is the Court's decision in *Weinberger v. Salfi*, supra. Under Sections 416(c)(5) and (e)(2) for a surviving wife or child of a deceased wage earner to qualify for insurance benefits, they have to demonstrate a family relationship to the deceased wage earner that lasted not less than nine months. Again the Court found this requirement rational in that its aim was the avoidance of sham marriages contracted for the sole purpose of securing Social Security benefits. Con-

gress could have concluded that a particular limitation or qualification would protect against this occurrence.

Lastly, in *Mathews v. de Castro*, supra, a married woman with dependent children, whose husband retired or became disabled was allowed the wife's insurance benefits. 42 U.S.C. 402(b)(1)(B). A divorced woman in the same situation did not receive such benefits. Again looking to the basic policy underlying the Social Security program the Court found that Congress "[c]ould rationally decide that the problems created for divorced women remained less pressing than those faced by women who continue to live with their husbands." *Id.* 429 U.S. at p. 189, 97 S.Ct. at p. 436.

We concede that none of the above mentioned cases can be rightly termed on point.[2] This is so because all six involve classifications; a benefit was granted or denied simply because of gender or marital status. Section 411(a)(5)(A) does not flatly prohibit either a husband or wife from being credited with self employment wages. It requires only that the participant who seeks accreditation of these wages be the participant who has actively earned them in a *de facto* manner. This is entirely rational in keeping with the Social Security's purpose as a statutory insurance policy. Cf. *Salfi, Jobst* and *de Castro*. To hold otherwise would imply that in the few community property jurisdictions both husband and wife would be credited with wages whether actually earned or not. Moreover, Plaintiff's rationale with respect to self employment community earnings could also be extended to regular earnings under § 409 to hold that all the earnings of one spouse are also automatically the earnings of the other, irrespective of actual employment. This is surely not the purpose of the Social Security program and it would indeed be carrying community property implications to an untenable limit.

■ Section 411(a)(5)(A) requires a husband or wife to prove that one, or the other,

---

**2.** Our research has discovered no case which deals directly with § 411(a)(5)(A). This is understandable in light of the fact that there are so few community property jurisdictions similar to Puerto Rico.

earned certain wages. Its plain literal terms deny that it is an irrebuttable presumption. Cf. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377–378, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973). Indeed the Secretary in his Regulations has adopted essentially the same interpretation, 20 C.F.R. 404.1057(a). Moreover, if both spouses actually materially participated in the earnings we see no reason why both could not be credited earnings in proportion to their respective labor, see e. g., under § 411(a): *Rasmussen v. Gardner*, 374 F.2d 589 (C.A.10, 1967). However, the record before us contains not a scintilla of evidence to this effect.[3] For this same reason we reject Plaintiff's claims of agent and/or employee relationship between her and her husband. All case law that has examined this point in the context of other self employment provisions has generally required some element of material participation by the principal party no matter how minimal. See e. g.: *Henderson v. Flemming*, 283 F.2d 882, 889 (C.A.5, 1960) where the Court found "supervision of the operation of the farm, the making of critically important decisions, and in the supplying of essential and substantial amounts of cash and credit and services performed by others at her expense"; *Hoffman v. Gardner*, 369 F.2d 837, 841 (C.A.8, 1966), where the Court found that the "claimant [had] made important decisions concerning the production activities"; *Rasmussen v. Gardner*, supra, p. 594, where the Court found the labor of an individual as the important factor; but see also: *Harper v. Flemming*, 288 F.2d 61 (C.A.4, 1961), where the Court premised its finding on the belief that contributions of capital would be sufficient "material participation" as to be considered self-employment.

▮ In conclusion, the overall policy embodied in the Social Security Act lends support to the requirement that self-em-ployment wages be credited to the bona fide earner of such wages. The fact that the statute may be poorly drafted is of little concern. Cf. *Jobst*, 434 U.S. at 56–57, 98 S.Ct. 95.[4] We forget not that:

> "[W]e deal here with a constitutional attack upon a law providing for governmental payments of monetary benefits. Such a statute 'is entitled to a strong presumption of constitutionality.' 'So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." *Califano v. Torres*, 435 U.S. 1, 5, 98 S.Ct. 906, 908, 55 L.Ed.2d 65 (1978) (citations omitted).

Inasmuch as we find that § 411(a)(5)(A) does treat "similarly situated" husbands and wives in a "similar" manner it does not violate the equality principle of the Due Process Clause of the Fifth Amendment. As explained above, the Secretary's determination that Plaintiff could not be credited with self employment income for the years 1973, 1974 and 1975 is supported by substantial evidence from the record. 42 U.S.C. § 405(g).

For all the above cited reasons the decision of the Secretary is AFFIRMED. The Clerk of the Court shall enter Judgment accordingly.

IT IS SO ORDERED.

---

**3.** Nor is there any evidence that Plaintiff rents real estate which is what § 411(a)(1) is addressed to and what Plaintiff invokes on review as the applicable standard.

**4.** "General rules are essential if a fund of this magnitude is to be administered with a modicum of efficiency, even though such rules inevitably produce seemingly arbitrary consequences in some individual cases." *Jobst*, at p. 53, 98 S.Ct. at p. 99.