**Lori SINGER, Plaintiff,**

v.

**Santos ALONSO, et. al., Defendants.**

**Civ. No. 88–0366 (PG).**

United States District Court,
D. Puerto Rico.

Jan. 17, 1990.

---

James A. Toro, Santurce, P.R., for plaintiff.

Raúl Dávila Rivera, Old San Juan, P.R., for defendants.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

The question before this Court is whether the owner of a vehicle who paid for the compulsory accident insurance coverage established by the laws of Puerto Rico has to pay the medical expenses of a plaintiff who, although entitled to receive her treatment compliments of the system that was thus created, elected to receive attention at the mainland hospital of her choice. The matter stands submitted on defendants' motion for, and plaintiff's opposition to, partial judgment on the pleadings. Defendants have also filed a timely reply thereto. For the reasons stated below, we hold that he does not.

### I

We enunciate the facts inasmuch as they are pertinent to the business at hand. Plaintiff Lori Singer, a 31–year old citizen of the United States and a domiciliary of the State of New York, was injured on June 18, 1987, as she attempted to cross Baldorioty de Castro Avenue at or near the intersection with the road to Vistamar in Isla Verde, Puerto Rico. The vehicle that struck her was being operated at the time by Ms. Debbie Alonso, a 20–year old minor who had obtained permission from the car's owner, her father and co-defendant Mr. Santos Alonso, to drive his automobile. Ms. Alonso's father is a United States citizen and a domiciliary of the Commonwealth of Puerto Rico.

Ms. Singer was hospitalized and treated for multiple injuries at various local institutions from June 18, 1987, through July 6, 1987. On this latter date she was discharged from San Carlos Hospital in Santurce, Puerto Rico, and she solicited and received further treatment at Flushing Hospital and Medical Center in Flushing, New York. A quick review of the record shows that upon plaintiff's initial admission to the Puerto Rico Medical Center Emergency Ward, as well as upon her transfer to and discharge from San Carlos Hospital, her medical insurance was listed as being "AACA."

A brief description of the framework of the Puerto Rico Automobile Accident Social Protection Act[1] is in order. This legislation created a system of social compensation whereby all car owners must pay a compulsory premium at the time of the vehicle's registration with all proceeds going to fund a general public insurance program for people involved in automobile accidents. The victim of a traffic accident can file a claim within a specified period of time before the Automobile Accident Compensation Administration[2] which entitles him or her to receive, among other things, full payment of all his or her medical expenses for the first two years immediately following the date of the accident, no questions asked. If the cause of the accident is not among a list which is taxatively outlined in the statute (prominent among which are driving while intoxicated or without legal authorization to do so), the Administration cannot repeat against the guilty party for the amount of damages advanced to the victim. The victim, however, can always initiate legal action against the other party for all damages suffered by him or her which were not covered by the legislation, naturally having to prove negligence on this the lesser at-

---

1. Law No. 138 of June 26, 1968, P.R.Laws Ann. tit. 9, § 2051 et seq. (Hereinafter "the Act" or "Law 138").

2. Hereinafter "AACA" or "the Administration."

228

tractive of the two roads to recovery.[3] The record in this case shows that at the time of the vehicle's registration Mr. Santos Alonso had paid for the compulsory accident insurance coverage established by the Puerto Rico Automobile Accident Social Protection Act.

With this brief prelude, we turn our attention to the inquiry that we answer today.

## II

### A

Ours is, admittedly, a question of first impression, at least as far as litigation in this district is concerned. Even so, we do not find ourselves totally in the dark as we take our initial steps towards its resolution. The Supreme Court of Puerto Rico, whose opinions interpreting the Act in controversy control our treatment of the matter at bar, confronted a related though slightly different question in *Urrutia v. A.A.A.*, 103 P.P.R. 896 (1975). We believe the reasoning of *Urrutia* applies with equal force in this case.

In *Urrutia* plaintiff was similarly involved in a traffic accident which resulted in serious injuries to herself. In that case professional medical treatment was also sought outside the system that had been established by the Act, though nevertheless within the Commonwealth of Puerto Rico. In later filing suit to recover damages in the local courts, plaintiff made a claim for $2,565.80 paid by her as medical expenses during the days of her recovery. Defendants contended that, pursuant to § 8(3)(c) of the Act,[4] they were entitled to deduct from the sentence to be imposed the total amount of the medical expenses that plaintiff could have received had she origi-

nally recoursed to AACA for relief. The Supreme Court, in construing § 8(3)(c) and in finding for defendants, reasoned thusly:

Its [§ 8(3)(c)'s] logical interpretation implies that when a claimant fails to avail himself of said system, *being entitled to it*, the higher amount for medico-hospital expenses incurred outside the system is validly opposable to him, and the total sum in excess of $2,000 must be deducted.

To conclude otherwise would be to leave to the judgment of claimant the fixing of the compensation for this concept by being able to choose, without any juridical consequence whatsoever, to resort to a treatment extraneous to the established system of social compensation, rendering inoperative one of the deductions fixed in the law.

*Urrutia v. Puerto Rico Aqueduct and Sewer Authority*, 103 P.R.R. 896, 903–904 (1975). (Emphasis on the original).

As we view things, two are the pillars that lend primary support to the Supreme Court's decision in *Urrutia*. Likewise in our estimation, both considerations argue in favor of a similar result in the case at bar. First, the *Urrutia* Court placed great emphasis on the fact that the claimant was entitled to avail herself of the benefits of the system, yet voluntarily elected not to receive them. Under the Automobile Accident Social Protection Act, then, the fact that an injured party has a choice of receiving medical attention compliments of the Administration but chooses not to take it is fatal to any subsequent claim for medical-hospital expenses incurred in by the victim. In the instant case, plaintiff not only had the choice of receiving medical treatment and have the Administration pick up the tab, she actually did receive it during the

---

**3.** *See generally,* H. Brau del Toro, *Los Daños y Perjuicios Extracontractuales en Puerto Rico,* 923–934 (2d ed. 1986).

**4.** Section 8(3)(c) states:
(3) Any person whom a court declares in a civil action responsible for having caused through negligence injuries for which the victims, his survivors or any other person are entitled to receive benefits or medical-surgical and hospital services under this chapter, shall

be entitled to a reduction in the sentence to be imposed by the court up to the amount indicated in this section.

. . . . .

(c) The deduction applicable to damages and losses for causes other than physical and mental sufferings shall be the sum of $2,000 or the amount of the total benefits paid by the Administration, if said amount is greater than $2000.

first couple of months immediately following her accident, then freely chose to forsake it and continue her recovery at the mainland hospital selected by her. Nowhere is it contended that the treatment she received in New York was not available to her in Puerto Rico, an allegation which would at least shake the assertion that she could have opted for complete treatment in the local hospitals. As with the plaintiff in the *Urrutia* decision, then, the bottom line is that, having the alternative of receiving medical treatment under an insured status, she nevertheless elected to seek medical attention at her expense.

Secondly, in *Urrutia* the Supreme Court of Puerto Rico was concerned that allowing a plaintiff "to resort to a treatment extraneous to the established system of social compensation" would seriously undermine the effectiveness of the legislation that had been promulgated, as it would leave to the judgment of the claimant the fixing of the compensation to be awarded for medical expenses. Once again, this consideration warrants a similar result in the case at bar. Were we to hold that plaintiff, by recurring to the Flushing Hospital and Medical Center in New York, and thus turning down the insured medical treatment she could have received at San Carlos Hospital in Puerto Rico, she became entitled to recover from defendants the full amount of her subsequent medical expenses, we would in fact be providing future plaintiffs with an alternate way of circumventing the provisions of the Automobile Accident Social Protection Act after the highest local Court expressed itself in no uncertain terms about the importance of protecting the social compensation system that had been created. The Law, as expounded by its supreme interpreter, cannot be so whimsically applied.

To her credit, plaintiff attempts to distinguish the facts of this case from the *Urrutia* setting, but all to no avail. She argues that the plaintiff in *Urrutia* differs from herself in two respects, both of which she perceives to have been fundamental for the Supreme Court's decision in that case. We think otherwise. The *Urrutia* plaintiff, she contends, as opposed to her, was a domiciliary of the Commonwealth of Puerto Rico. And the *Urrutia* plaintiff, although admittedly also entitled to treatment and care under the AACA system, voluntarily chose to avail herself of non-contract physicians and hospitals within Puerto Rico, as opposed to her who selected her physicians and hospitals from outside the Commonwealth of Puerto Rico. We are of the opinion that these differences are inconsequential, to say the least. The *Urrutia* holding, like our decision today, applies with the same force whether a plaintiff is a citizen of Puerto Rico or of one of the states of the Union. Put another way, if a citizen of any other state of the Union was involved in a car accident in Puerto Rico and, being entitled to AACA benefits, nevertheless chose to receive insured medical treatment within Puerto Rico, *Urrutia* would clearly bar any subsequent claim to recover medical expenses. We likewise fail to see why a plaintiff's alternate choice of treatment (whether it be with a non-participant physician within Puerto Rico or with a physician in one of the United States), after having turned down the insured medical treatment to which they were entitled, should be of any moment. If these distinctions, in isolation, do not require a different result, we decline the invitation to give them so transcendental an effect when jointly considered.

### B

Plaintiff essays a couple of additional arguments on her behalf, neither of which merit extensive discussion. The first one, however, being of constitutional magnitude, moves us to elaborate in some detail.

Plaintiff contends that applying, as we have applied, the *Urrutia* holding to the facts of this case draws into question the constitutionality of the Act as applied since it would do violence to her constitutional right to travel as that right is guaranteed by the Constitution of the United States. This is so in view of the fact that it would compel her, under the statutory authority of Law 138, to remain in Puerto Rico for treatment or lose her entitlement to medical expenses, expenses she would other-

wise have a right to recover if she could establish defendants' liability in the instant case. The basis for her conclusion is that in her view any restraint by the Commonwealth of Puerto Rico upon a non-resident United States citizen's right to travel would not clear the constitutional bar as that bar was set in *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968) and its progeny. In one sentence, mention is also made of alleged violations to the equal protection and due process clauses of the federal Constitution. Relying on the *Crowell v. Benson*[5] doctrine, however, plaintiff submits that no constitutional issue need be reached in the instant case as it is a cardinal principle of Constitutional Law that Courts must first ascertain whether a construction of the statute at issue is fairly possible by which the constitutional question may be avoided. This being so, the argument goes, we should not be guided by the *Urrutia* decision but should in its stead accept her interpretation of the statute which allows for the recovery of medical expenses even under the circumstances of the case at bar.

The *Crowell v. Benson* doctrine, however, need not worry us here as we find no constitutional infirmity in this case. Clever though it may be, plaintiff's right to "travel violation" argument does not bear close scrutiny. The constitutional right to travel, though not given by any one constitutional provision, has nevertheless received "fundamental" treatment, *Shapiro*, 394 U.S. at 631–632, 89 S.Ct. at 1329–1330, a characterization which we do not, as we of course cannot, dispute today. Be that as it may, the Supreme Court has also stated that "[i]n reality, right to travel analysis refers to little more than a particular application of equal protection analysis," *Zobel v. Williams*, 457 U.S. 55, n. 6, 102 S.Ct. 2309, n. 6, 72 L.Ed.2d 672 (1982), and in *Attorney General of N.Y. v. Soto–Lopez*, 476 U.S. 898, 920, 106 S.Ct. 2317, 2330, 90 L.Ed.2d 899 (1985) (a case where no majority opinion could be agreed upon but on

which the plurality opinion nevertheless placed great emphasis on the violation of plaintiff's "right to migrate") a dissenting opinion by Justice O'Connor, joined by then Associate Justice Rehnquist and Justice Stevens, found it "unfortunate that the Court ha[d] once again failed to articulate and justify by reference to textual sources a single constitutional principle or analysis on which it can rely for deciding such a case as this." Even at its strongest, however, the right to travel never had the scope plaintiff would have us attribute to it in the case at bar. In *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 261, 94 S.Ct. 1076, 1083–84, 39 L.Ed.2d 306 (1973), the Court characterized the "right to interstate travel as insuring to new residents the same right to vital government benefits and privileges in the States[6] to which they migrate as are enjoyed by other residents." *See also Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968) and *Strong v. Collatos*, 593 F.2d 420 (1st Cir.1979). Thus, the doctrine only forbids a state to treat newly arrived residents significantly less favorably than those who have lived in the state for a longer period of time. Nothing more, nothing less.

Viewed in this light, plaintiff's situation in no way implicates her constitutional right to travel. The problem with her argument, we suggest, is that she places the cart before the horse. The fact that she, a newly arrived resident of Puerto Rico, was nevertheless entitled to receive the same benefits under the social compensation legislation as those residents who had lived for a longer period of time in the Commonwealth of Puerto Rico only goes to show that the Act complied fully with the parameters established by the United States Supreme Court for the constitutional right to travel. States cannot treat a newly arrived resident less favorably than those with a longer period of residency, but they do not have to follow their citizens around to ensure they do not lose the privileges and benefits they were entitled to receive with-

---

**5.** *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296–97, 76 L.Ed. 598 (1931).

**6.** The United States Court of Appeals for the First Circuit has held that the right to travel does apply to Puerto Rico, *Lopez Lopez v. Aran*, 844 F.2d 898, 902 (1st Cir.1979).

in the boundaries of their state. *Cf. Califano v. Torres,* 435 U.S. 1, 98 S.Ct. 906, 55 L.Ed.2d 65 (1978). Nothing in the federal Constitution requires a conclusion of that sort. Accordingly, we find that no constitutional violation is present in this case.

As for the due process and equal protection claims, we have already given them equal attention as that given to them by plaintiff in her brief.

### C

Plaintiff's final argument attempts to infer the intent of the Legislature of Puerto Rico from the wording of the statute. In this spirit, she first recalls that the statute's "express language ... clearly states that the benefits available under AACA are payable only for those services rendered within Puerto Rico." *See* P.R.Laws Ann. tit. 9, § 2054(5) & 2055(5). If this is so, she argues, then once she resorted to medical treatment in the States she was not entitled to receive the benefits of the Act and can therefore not be subjected to the deductions outlined therein. It is a well settled principle of statutory construction, however, that courts cannot attribute intentions to the legislative body that would lead to absurd results or frustrate the purposes of a statute. *Wilcox v. Ives,* 864 F.2d 915, 926 (1st Cir.1988). Were we to accept plaintiff's interpretation of this provision, we would be implying that the Legislature of Puerto Rico had built an escape valve into the statute through which all interested plaintiffs could, by travelling to the States to receive medical attention, render the whole system of social compensation ineffective. The provision is therefore not a statement of alternatives but a specific directive advising victims of the availability of receiving insured medical treatment in Puerto Rico, and any loss suffered by the plaintiff as a result of not resorting to said system can only be characterized as self-inflicted.

### III

In view of the facts that we find the Puerto Rico Supreme Court's decision in *Urrutia v. Aqueduct and Sewer Authori-*

ty to be undistinguishable and controlling and that we find none of plaintiff's arguments to warrant a contrary result, we hold that plaintiff is not entitled to recover the medical expenses incurred during her recovery period in Flushing Hospital and Medical Center in New York when she could have received it in Puerto Rico under the insured status provided by the Puerto Rico Automobile Accident Social Protection Act.

WHEREFORE, defendants' motion for partial judgment on the pleadings is hereby GRANTED.

IT IS SO ORDERED.