Sam J. WINGER, et al., Plaintiffs,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. 03–3111.

United States District Court,
C.D. Illinois,
Springfield Division.

May 19, 2004.

Jason R. Craddock, Springfield, IL, for Plaintiffs.

James A. Lewis, Assistant U.S. Attorney, Springfield, IL, for Defendant.

### ORDER

EVANS, United States Magistrate Judge.

This matter comes before the Court on Plaintiffs', Sam J. Winger and Aaron L. Winger, Motion For Summary Judgment (d/e 9) (Plaintiffs' Motion), and Defendant's, Jo Anne B. Barnhart, Commissioner of Social Security, (Commissioner) Motion For Summary Affirmance (d/e 13) (Commissioner's Motion), pursuant to Federal Rule of Civil Procedure 56 and 42 U.S.C. § 405(g).[1] The parties have filed

---

1. The Commissioner notes that Arvenia Winger, who was listed as a plaintiff in the Complaint (d/e 1), is deceased. Accordingly, she does not have standing to participate in the present action.

cross motions for summary judgment in accordance with Local Rule 8.1, and have consented to proceed before the U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's Motion is allowed, and Plaintiffs' Motion is denied. The Commissioner's decision as to Plaintiffs', Sam J. Winger and Aaron L. Winger, (the Wingers) appeal is affirmed.

## BACKGROUND

Arvenia L. Winger (Arvenia) was born on November 4, 1944, and married Sam J. Winger (Sam) on January 29, 1964. Together they had three children, one of whom is Aaron M. Winger (Aaron), a co-plaintiff in this case. In September 1995, Arvenia suffered a severe heart attack that put her into a coma for six weeks. She was left with 20% heart capacity, and died on April 29, 1998.

On May 13, 1998, Sam and Aaron applied for survivor's Social Security benefits based on their kinship with Arvenia. Sam applied for Father's Insurance Benefits, *see* 42 U.S.C. §§ 402(g), 416(d), and Aaron applied for Child's Insurance Benefits, *see* '42 U.S.C. §§ 402(d), 416(e). Throughout her life, however, Arvenia worked only intermittently outside the home. Her primary work was as a homemaker for her family. She earned Social Security credits for work outside the home in the years 1965–1969, 1983–1984, 1992–1995. Using the standard set forth in 42 U.S.C. § 414 to determine Arvenia's insured status for survivor's insurance benefits, the Commissioner calculated that Arvenia had earned 23 quarters of coverage throughout her life, and only 3 quarters of coverage in the last 13 quarters of her life. Based on this work history, the Commissioner concluded that Arvenia was neither "currently insured," under 42 U.S.C. § 414(b)(1), nor "fully insured," under 42 U.S.C. § 414(a).[2] Accordingly, the Commissioner denied the Wingers benefits on May 19, 1998.

On July 14, 1998, the Wingers appealed the initial decision of the Commissioner by letter, arguing that Arvenia likely would have drawn social security benefits the last two years of her life, but her health had been too impaired for her to complete the application process. One year passed before the Wingers' appeal was heard. On August 11, 1999, the Commissioner denied the Wingers' appeal.

On September 23, 1999, the Wingers sent the Commissioner a letter asking, in the alternative, for the return of Arvenia's Social Security contributions. Neither the Wingers nor the Commissioner say whether this letter was ever answered. On November 5, 1999, the Wingers requested a hearing to appeal the Commissioner's benefits decision. On December 5, 2000, a hearing was held before an administrative law judge (ALJ), who denied the Wingers' claims on April 26, 2001. On July 29, 2001, the Wingers requested a review of the

---

**2.** To be "currently insured," one must work at least six quarters during the last thirteen-quarter period ending with the quarter in which the person dies. 42 U.S.C. § 414(b)(1). To be "fully insured," one must have at least: (1) one quarter of coverage for every calendar year from the year in which she attains age 21 to the year before she dies, 42 U.S.C. § 414(a)(1); (2) 40 quarters of coverage total, 42 U.S.C. § 414(a)(2); or (3) six quarters of coverage, if deceased prior to 1951, 42 U.S.C. § 414(a)(3).

Arvenia was not "currently insured" because she earned only three quarters of coverage in the last thirteen quarters of her life, and was not "fully insured" because she earned only 23 quarters of coverage total between the year when she turned 21 and the year before her death. *Commissioner's Memorandum In Support For Summary Affirmance (d/e 14)* (Commissioner's Memorandum), pg. 3. The Wingers do not dispute the Commissioner's calculation of Arvenia's quarters of coverage. *Plaintiffs' Motion,* pgs. 2–3, ¶¶ 9–10.

ALJ's decision by the Appeals Council. On March 13, 2003, the Appeals Council affirmed the ALJ's denial of benefits. The Wingers' appeal to this Court followed.

The Wingers bring four arguments in furtherance of their claim for benefits. They argue that the Commissioner's denial of benefits: (1) effects a taking under the Fifth Amendment of the U.S. Constitution; (2) violates procedural due process under the Fifth Amendment because it was based on an arbitrary and irrational classification system (the quarters of coverage system); and (3) violates equal protection under the Fifth Amendment because it discriminates against homemakers. Finally, the Wingers also allege that their Fifth Amendment due process rights were violated because they were not granted a hearing on the Commissioner's denial of benefits in a timely manner.

The parties' dispute is confined to legal arguments—there are no genuine issues of material fact in dispute. Accordingly, this Court reviews those issues *de novo. Sample v. Shalala,* 999 F.2d 1138, 1144 (7th Cir.1993) ("We review de novo the questions of law, including whether additional evidence is new and material.").

## *ANALYSIS*

### I. FIFTH AMENDMENT TAKINGS CLAIM

■ The Takings Clause of the Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." *U.S. Const.* amend. V. The Wingers argue that the Commissioner's denial of benefits constitutes a taking because Arvenia paid Social Security taxes, but neither she nor her family were allowed to receive benefits. *Plaintiffs' Motion,* pg. 4, ¶ 1.

■ As the constitutional text makes clear, however, before a claim for a taking can be made, the claimant must demonstrate a private right to the property at issue. It is here that the Wingers' Takings Clause claim fails. The Supreme Court has held that those taxed to support the Social Security system have no property right to Social Security benefits. *Flemming v. Nestor,* 363 U.S. 603, 610, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) ("To engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands."); *Richardson v. Belcher,* 404 U.S. 78, 80, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Wright v. Califano,* 587 F.2d 345, 354 (7th Cir.1978); *Social Security Law and Practice,* § 1:39 (2004). Arvenia had no property right to her Social Security tax payments, and no property right to benefits. Accordingly, the Wingers Takings Clause claim has no merit.

■ As the sole support for their claim, the Wingers' cite to *Eastern Enterprises v. Apfel,* 524 U.S. 498, 522, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), essentially arguing that *Eastern Enterprises* has overturned *Flemming.* A review of *Eastern Enterprises* proves that conclusion false. First, the *Eastern Enterprises* Court issued a plurality opinion, with only four Justices concluding that a violation of the Takings Clause of the Fifth Amendment had occurred in that case. *See Eastern Enterprises,* 524 U.S. at 528, 118 S.Ct. 2131 (O'Connor, J., joined by Rehnquist, C.J., and Scalia and Thomas, JJ.). Although he concurred in the judgment, Justice Kennedy stated, "the case is controlled not by the Takings Clause but by well-settled due process principles respecting retroactive laws." *Id.* at 547, 118 S.Ct. 2131 (Kennedy, J., concurring in the judgment, and dissenting, in part). Justices Breyer, Ginsburg, Souter, and Stevens, JJ., dissented from the judgment, finding no taking or due process violation at all. *Id.* at 554, 118 S.Ct. 2131 (Breyer, J., dissenting,

joined by Ginsburg, Souter, and Stevens, JJ.). Accordingly, *Eastern Enterprises* cannot be said to have changed the Court's Takings Clause precedent, and the Wingers' citation to the case can have nothing more than persuasive appeal.

In addition, the Wingers' attempt to analogize the facts of *Eastern Enterprises* to their situation cannot be sustained. *Eastern Enterprises* concerned the liability of a corporation for health benefits for coal miners and their dependents, based on collective bargaining agreements between the coal industry and the miners' unions in 1950 and 1974. Under the Coal Act of 1992, Congress attempted to shore up a failing benefits system for coal miners and their dependents by merging the benefits plans established by the 1950 and 1974 collective bargaining agreements into a new United Mine Workers of America Combined Benefit Fund (Fund). The Fund was to be supported by coal operators who signed either the 1950 or 1974 agreement. *Id.* at 514, 118 S.Ct. 2131. The Court found that Congress could not exact benefits contributions from Eastern Enterprises, however, because Eastern was not a party to the 1974 collective bargaining agreement at issue. *Id.* at 528, 547, 118 S.Ct. 2131. Accordingly, the Court found that Congress unconstitutionally overreached its authority with the Coal Act of 1992.

In contrast, the present action concerns mandatory Social Security taxes, not collective bargaining agreements. The Supreme Court has written that, "[t]he design of the system requires support by mandatory contributions from covered employers and employees. This mandatory participation is indispensable to the fiscal vitality of the social security system." *United States v. Lee*, 455 U.S. 252, 258, 102 S.Ct. 1051, 71 L.Ed.2d 127 (1982). Therefore, *Eastern Enterprises* provides no support for the Wingers' position. The Commissioner's denial of benefits in no way violated the Wingers' rights under the Takings Clause of the Fifth Amendment.

## II. FIFTH AMENDMENT DUE PROCESS RATIONAL BASIS CLAIM

■ The Due Process Clause of the Fifth Amendment requires that the government not deprive any citizen of "life, liberty, or property, without due process of law." *U.S. Const.* amend. V. The Wingers argue that the Commissioner violated this right when she denied their claims for Social Security benefits because they were deprived "of their property (social security taxes taken from Arvenia) and such deprivation [was] based on an arbitrary and irrational classification (the quarter system)."[3] *Plaintiffs' Motion*, pg. 4, ¶ 2.

■ As an initial matter, the Wingers have no private property right to Arvenia's Social Security taxes, as set forth above. In addition, the Wingers have not met their burden of proof to show that the Social Security quarters of coverage system violates the Due Process Clause. To show that a statute providing for payment of monetary benefits violates the Due Process Clause, the Wingers must overcome a strong presumption of rationality. *Califano v. Gautier Torres*, 435 U.S. 1, 5, 98 S.Ct. 906, 55 L.Ed.2d 65 (1978) (per curiam). They must show that "the statute manifests a patently arbitrary classifica-

---

**3.** To determine eligibility for Social Security benefits, the Social Security Administration looks to the "quarters of coverage" accumulated by the employee. 20 C.F.R. § 404.101. As defined, a "quarter" consists of "a period of three calendar months ending March 31, June 30, September 30, or December 31 of any year." 20 C.F.R. § 404.102. Accordingly, an employee has the opportunity to earn four quarters of coverage for work done in any given year—January 1 to March 31, April 1 to June 30, July 1 to September 30, and October 1 to December 31.

tion, utterly lacking in rational justification." *Flemming,* 363 U.S. at 611, 80 S.Ct. 1367. The Supreme Court, in upholding 42 U.S.C. § 424a of the Social Security Act against a similar Due Process challenge, noted, "[i]f the goals sought are legitimate, and the classification adopted is rationally related to the achievement of those goals, then the action of Congress is not so arbitrary as to violate the Due Process Clause of the Fifth Amendment." *Richardson,* 404 U.S. 78, 84, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971).

The Wingers confine their attempt to show that the quarter system is arbitrary and irrational to two sentences. In sum, they state:

> ... there is no connection between Arvenia and those who profit from her earnings. Yet, the quarter system takes money from individuals like Arvenia and then operates in such a manner as to deny those who are truly entitled [to] the benefits of her investment, namely her surviving dependents.

*Plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion For Summary Judgment (d/e 10)* (Plaintiffs' Memorandum), pg. 7. The remainder of the Wingers' case is spent proposing a "more rational and less arbitrary system" to replace the current scheme. *Id.*

First, the Wingers are mistaken when they refer to Arvenia's Social Security tax payments as an "investment." *Id.* The Supreme Court rejected this notion when it stated that "[i]t is apparent that the noncontractual interest of an employee covered by the Act cannot be soundly analogized to that of the holder of an annuity, whose right to benefits is bottomed on his contractual premium payments." *Flemming,* 363 U.S. at 610, 80 S.Ct. 1367. Second, the Wingers' showing fails to carry their heavy burden of proof of the system's arbitrary or irrational nature. For example, the Wingers fail to identify any of the

goals of the Social Security system, or demonstrate how the quarters of coverage system is incapable of achieving those goals. In contrast, the Commissioner identifies two goals of the Social Security program that are both furthered by the quarters of coverage system. The Commissioner notes that the quarters of coverage system: (1) makes the Social Security program self-supporting, and (2) creates a method of limiting Social Security benefits for those who have been dependent on their earnings. *Commissioner's Memorandum,* pg. 14. Courts have previously recognized that both of these goals are rationally related to the legislative purpose underlying the Social Security system. *See Geduldig v. Aiello,* 417 U.S. 484, 496, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974); *Tuttle v. Sec'y of Health, Ed., & Welfare,* 504 F.2d 61, 63 (10th Cir.1974). Therefore, the quarters of coverage scheme set forth by 42 U.S.C. § 414 does not violate the Due Process Clause of the Fifth Amendment.

## III. FIFTH AMENDMENT EQUAL PROTECTION CLAIM

The Fifth Amendment to the U.S. Constitution has no Equal Protection Clause, however, the Supreme Court has interpreted the Due Process Clause as prohibiting federal action from discriminating in a way that "is so unjustifiable as to be violative of due process." *Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 42 L.Ed.2d 610 (1975). The Supreme Court's treatment of equal protection claims premised on the Fifth Amendment is the same as those posed under the Fourteenth Amendment. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975).

The Wingers argue that the Commissioner's denial of benefits constitutes unconstitutional discrimination

against homemakers because the Social Security scheme treats homemakers differently than non-homemakers who work outside the home. *See Plaintiffs' Motion,* pgs. 4–5, ¶ 3. The Court notes that this supposed discrimination is not sex-based—42 U.S.C. § 414 applies equally to both men and women who, like Arvenia, were employed outside the home intermittently. The Wingers present no evidence that homemakers are a suspect class entitled to either strict scrutiny or heightened scrutiny.[4] Accordingly, to find an equal protection violation under the Due Process Clause of the Fifth Amendment it is the Wingers' burden to show that there is no rational basis for the classification under review.

The Supreme Court has held that "a classification must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Tuan Anh Nguyen v. I.N.S.,* 533 U.S. 53, 77, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (internal quotations omitted). In addition, "[u]nder rational basis scrutiny, the means need only be rationally related to a conceivable and legitimate state end." *Id.* (internal quotations omitted).

As shown in the previous section, *supra,* there is a rational basis for the means employed (the quarters of coverage system), to achieve the intended purpose (determining applicants' eligibility for Social Security benefits, while allowing the program to be self-supporting, and assuring that those receiving benefits were primarily dependent on their lost wages). There-

fore, the Wingers cannot show that 42 U.S.C. § 414 violates the equal protection principles inherent in the Due Process Clause.

## IV. FIFTH AMENDMENT DUE PROCESS DELAY OF HEARING

■ The Wingers argue that their Due Process rights under the Fifth Amendment were violated when they had to wait over one year for a response to their appeal of benefits (from their July 14, 1998 letter until the Commissioner's August 11, 1999, response), and over one and one-half years for a hearing before an ALJ (from their November 5, 1999 letter requesting a hearing until the December 5, 2000, hearing before the ALJ).[5] *See Plaintiffs' Memorandum,* pg. 10; *Commissioner's Memorandum,* pgs. 2–3.

■ Administrative delay can violate due process, however, "[s]ince administrative efficiency is not a subject particularly suited to judicial evaluation, the courts should be reluctant to intervene in the administrative adjudication process, absent clear congressional guidelines or a threat to a constitutional interest." *Wright v. Califano,* 587 F.2d 345, 353–354 (7th Cir.1978). A reviewing court may only find a due process violation if "the delays are arbitrary or the result of some other inexcusable circumstance." *Id.* at 354.

The Wingers provide no evidence that the delay in their case was arbitrary or otherwise the product of inexcusable circumstances. In contrast, the Commis-

---

4. In fact, the Court doubts whether the Wingers have shown that the Commissioner classifies applicants by their status as homemakers at all. The Commissioner does not contest this point. Accordingly, the Court gives the Wingers the benefit of the doubt.

5. The Court notes that the Wingers exaggerate when they claim that "the hearing was one and one-half years after Plaintiffs requested it." *Plaintiffs' Memorandum,* pg. 10. In fact, the Wingers first requested a hearing in their November 5, 1999, letter, and received a hearing one year, and one month later, on December 5, 2000.

sioner notes that, "[i]n 2003, the Agency received over 3.3 million applications for disability benefits alone." *Commissioner's Memorandum,* pg. 17. In fact, problems with delay in adjudication at the Social Security Administration have been long-standing, as demonstrated by the 1978 opinion, *Wright v. Califano, supra.* The Commissioner states that the delay in the Wingers' case was due to case load and resource imbalance, not bad faith. *Commissioner's Memorandum,* pgs. 18–19. Without more, the Court cannot conclude that the Wingers' due process rights were violated by the delays they note.

### CONCLUSION

THEREFORE, Defendant's, Jo Anne B. Barnhart, Commissioner of Social Security's Motion For Summary Affirmance (d/e 13) is ALLOWED, and Plaintiffs', Sam J. Winger and Aaron L. Winger, Motion For Summary Judgment (d/e 9) is DENIED. The decision of the Social Security Administration is AFFIRMED. This case is closed.

IT IS THEREFORE SO ORDERED.