John SULLIVAN et al., Appellants,

v.

The UNIVERSITY INTERSCHOLASTIC LEAGUE et al., Appellees.

No. 13078.

Court of Civil Appeals of Texas, Austin.

May 14, 1980.

H. Clyde Farrell, Texas Civil Liberties Union, Uvalde, for appellants.

Mark White, Atty. Gen., Carla Cox, Asst. Atty. Gen., Austin, for University Interscholastic League and Dr. Bailey Marshall.

Brook Bennett Brown, McGinnis, Lochridge & Kilgore, Austin, for Jack L. Davidson, Charles Akins, James Acker, John Brown.

SMITH, Justice.

The opinion of this Court filed on March 19, 1980, is withdrawn, and the following opinion replaces it.

The appellant, John Sullivan, through his father and next friend, Joe Sullivan, sued the University Interscholastic League, the Austin Independent School District, and four named officials of the School District challenging the validity and constitutionality of Section 14 of Article VIII of the *Constitution and Contest Rules* of the University Interscholastic League. This section provides that a student who has represented a high school (other than his present school) in either football or basketball is ineligible, for one calendar year after moving to another district, to participate in the same sport in the school to which he changes. For the sake of brevity, the "One Year Rule" will be referred to in this opinion as "the rule."[1]

---

1. "Sec. 14. One-Year Rule.—A pupil who has represented a high school (other than his present school) or academy in either football or basketball is ineligible, only in the sport or sports (football or basketball) in which he participated, for one calendar year in a school to which he changes. Exceptions to Section 14:

(A) A pupil who changes from a school which he has attended for at least one year having less than 15 accredited units to the nearest higher class school (see Article VII, Section 5) to his home, or the nearest in his county. A pupil living at home with his parents (or guardian) and qualifying under the "exception A" clause above is eligible under this section in any higher class school within fifteen miles. A pupil changing from a training school conducted by a college to the local high school in the district in which his parents have lived at least one year is not eligible under this rule.

(B) A student who has only one year of eligibility remaining may participate in any new school to which he may transfer, provided he has a release, signed by the superintendent of the district or by his delegated administrator, and by the principal and coach of the school he previously attended, to the effect that the pupil was not recruited and that no undue influence was exerted upon him or his family; and pro-

This suit was brought as a class action, pursuant to Rule 42, Texas Rules of Civil Procedure (1979). The trial court certified as a class ". . . all Texas public high school students who are or will be ineligible to play public high school varsity basketball or football because they have moved into Texas from another state within the preceding year." On April 25, 1979, the trial court dismissed appellants' action against the named school officials and granted a summary judgment on the motion of the University Interscholastic League and the Austin Independent School District. Appellants have duly perfected this appeal from the trial court's take nothing judgment. We affirm.

In March of 1977, John Sullivan moved with his family from Vermont to Austin because of a transfer of his father's employment. He had played basketball at his high school in Vermont. After entering school in Austin, he was informed that he was ineligible to play UIL-sponsored varsity basketball by operation of the "One Year Rule." Sullivan brought suit alleging that this rule violated his right to due process and equal protection of law under the Fourteenth Amendment of the United States Constitution.

Initially, appellant contends that the rule violates the due process clause of the Fourteenth Amendment by establishing a nonpermissive irrebuttable presumption that any student who transfers from one high school to another after participating in varsity competition at the first school is transferring as a result of being recruited for varsity competition at the second school.

■ A two-step analysis is required in determining whether a person has been deprived of life, liberty or property without due process of law. This Court must first determine whether any constitutionally cognizable life, liberty or property interest is implicated. If so, it is only then that we must proceed to determine what process is

due under the circumstances, and whether the complainant has been accorded less than the requisite degree of procedural protection. *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977).

■ This is not a case of first impression. Similar rules regulating interscholastic high school sports have been uniformly upheld as constitutional by state, as well as federal, courts. We feel that these cases clearly establish that participation in interscholastic athletics is not a constitutionally protected liberty or property interest. *Albach v. Odle*, 531 F.2d 983 (10th Cir. 1976); *Dallam v. Cumberland Valley School District*, 391 F.Supp. 358 (M.D.Pa.1975); *Stock v. Texas Catholic Interscholastic League*, 364 F.Supp. 362 (N.D.Tex.1973); *Bruce v. South Carolina High School League*, 258 S.C. 546, 189 S.E.2d 817 (1972); *Mitchell v. Louisiana High School Athletic Ass'n*, 430 F.2d 1155 (5th Cir. 1970); *Oklahoma High School Athletic Ass'n v. Bray*, 321 F.2d 269 (10th Cir. 1963).

As Sullivan has no liberty or property interest in playing interscholastic sports, we are not required to reach the question of whether he was accorded due process of law in the UIL's refusal to allow him to play varsity basketball.

■ Appellant also asserts that the rule violates the equal protection clause of the Fourteenth Amendment by infringing on his rights of interstate travel and familial privacy.

"In an equal protection of the law analysis, the reviewing court . . . must recognize the applicable standard of judicial scrutiny. If the questioned statute infringes upon a 'fundamental right' or creates an inherently 'suspect classification,' the statute will be subjected to strict judicial scrutiny. Such scrutiny requires the state to establish a compelling interest in its enactment. To discharge such a burden the state must demonstrate that its purpose or

---

vided he is approved by the district executive committee of the district to which he is transferring. Refusal to release a pupil may be reviewed by the receiving district executive committee and this committee has the authority to declare the pupil eligible if there is no justifiable evidence for denying the release. (Must be eligible by Article VIII, Section 13)."

interest is both constitutionally permissible and substantial, and that its use of the classification is necessary to the accomplishment of its purpose." *Hernandez v. Houston Independent School District*, 558 S.W.2d 121, 123 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.); *Norwick v. Nyquist*, 417 F.Supp. 913 (S.D.N.Y.1976).

"On the other hand, if the statute does not collide with a fundamental right or create a suspect classification, the statute is accorded a presumption of constitutionality. The presumption may not be disturbed unless the enactment rests upon grounds wholly irrelevant to the achievement of a legitimate state objective." *Hernandez v. Houston Independent School District, supra.*

■ The right to travel between the states is not an absolute right but is subject to reasonable regulation. If the rule is directed toward deterring interstate travel or the interstate traveler is penalized for exercising the right to travel interstate (*i. e.*, denied some fundamental right or "necessity of life"), then it must be weighed against the "compelling state interest" test. However, if the rule does not deter or penalize interstate travel, then it is only subject to scrutiny under the "rational basis" test. *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974).

We do not believe that the UIL rule is directed toward deterring interstate travel. The rule applies equally to students moving intrastate as well as interstate and is, in fact, equally applicable to students who change schools within their own communities where there is no travel at all.

Likewise, we do not believe that Sullivan was penalized for exercising his right to interstate travel. To hold otherwise would require us to determine that the right to play interscholastic high school basketball is a "fundamental right" or a "life necessity." While we realize that this right is certainly a valuable one, it cannot be said to rise to the same level of dignity as the right to medical care or welfare payments. See: *Memorial Hospital v. Maricopa County, su-*

*pra*, n. 15; *Starnes v. Malkerson*, 326 F.Supp. 234 (D.Minn.1970), *affirmed without opinion*, 401 U.S. 985, 91 S.Ct. 1231, 28 L.Ed.2d 527 (1971).

Appellants also claim that the rule violates their right to privacy under the equal protection clause of the Fourteenth Amendment.

■ There is a constitutionally protected right to privacy implicit in the concept of liberty guaranteed by the first section of the Fourteenth Amendment. *Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). However, only rights that can be termed "fundamental" are included in this privacy guarantee. *Palko v. Connecticut*, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). The test of whether a right is "fundamental" lies in assessing whether it is ". . . explicitly or implicitly guaranteed by the Constitution." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

■ Although appellants argue that the rule infringes on their right to move as a family and to make educational decisions affecting their family, they are, in fact, complaining that the rule interferes with the family's right to have their children play interscholastic league sports. Such a right is not explicitly or implicitly guaranteed by the Constitution.

■ It is true that there is a constitutionally protected right of familial privacy relating to family relationships, child rearing and education. *Prince v. Commonwealth of Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska, supra*. However, these cases and others dealing with the right to privacy demonstrate that this right is implicated only when the challenged action represents a direct and substantial intrusion into the family relationship. *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978)—right to marry; *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551

(1972)—right of unwed father to a hearing before children removed from custody; *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972)—right to contraceptive paraphernalia; *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)—right to have children.

We do not believe that the limited term restriction on eligibility to participate in certain interscholastic league sports rises to the level of these aforementioned "fundamental rights" that are protected by the equal protection clause of the Fourteenth Amendment.

As the rule does not infringe on any fundamental rights with respect to travel or privacy, it is not subject to strict scrutiny, and must be upheld if it can ". . . be shown to bear some rational relationship to legitimate state purposes." *San Antonio School District v. Rodriguez, supra; New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Califano v. Torres*, 435 U.S. 1, 98 S.Ct. 906, 55 L.Ed.2d 65 (1978). The rule is subject to a strong presumption in favor of its constitutionality. *Mathews v. De Castro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).

The record reflects that the sole purpose of the rule is to discourage the recruiting of high school athletes in the highly competitive sports of football and basketball. The rule does not seek to punish anyone but merely to assure the integrity of a competitive sports program in public schools by completely removing any advantage of recruiting athletes. In this respect, the rule applies equally to all high school students whether the school formerly attended was within or outside the state of Texas. Furthermore, the rule does not prohibit any student from participating in these sports, but only prohibits students subject to the rule from participating in varsity competition between high schools which are members of the League.

The State has a legitimate interest in discouraging the recruitment of high school athletes in the more competitive sports. It is not our task to decide the desirability, the necessity or the relative merits of alternate ways in which the recruiting problem might be handled.[2]

Our disposition of this case on the grounds herein discussed makes consideration of appellant's other points unnecessary.

The judgment of the trial court is affirmed.

---

2. In *Walsh v. Louisiana High School Athletic Association*, 428 F.Supp. 1261 (E.D.La.1977), a similar transfer rule was upheld, the Court finding:

"The testimony offered by the LHSAA is persuasive that no plan of regulating recruiting is effective other than that of limiting the alternatives available to students. It is doubtful that case by case adjudication could effectively regulate the traffic in athletes. Individual inquiry on a case by case basis would involve a panoply of inquiry, hearing and decision-making. If recruiting occurred, neither of the parties to the successful evasion of the regulations would complain, nor would either be likely willingly to furnish evidence. The likely complainants would be opposing schools, which would have as little chance to prove their case as other prosecutors of consensual crimes. They would have no staff of investigators and no way to develop facts. Nor is any such staff available from any other source to investigate complaints. In addition, both the experience of the Association before the rule was adopted and the recurrent problems of collegiate regulation make it doubtful that the punishment of recruitment once it has occurred, even if later detected and proved, is sufficient to prevent recruitment. The time interval between enrollment of the 9th grade student in high school and his participation in an athletic event make it almost inevitable that the hearings to investigate whether or not illicit recruiting had taken place would occur after athletic events had taken place. Prophylaxis is not only more feasible than punishment; it may be the only effective way to deal with the problem. Hence as a pragmatic matter, the only feasible method is to adopt a clear, readily understandable and easily enforceable rule."