cv4-377.PERALES 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00377-CV







Roman Perales, Appellant



v.



Board of Law Examiners of the State of Texas;


Rachael Martin; Carol Smoot; The Supreme Court of Texas;


Chief Justice Thomas Phillips; and Warlick Carr, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 93-06598, HONORABLE PETE LOWRY, JUDGE PRESIDING







PER CURIAM


 Roman Perales, who narrowly missed a passing score on the Texas bar
examination, challenged the method of calculating bar examination scores as unauthorized,
unconstitutional, and discriminatory. He sued the Board of Law Examiners, which administers
the bar examination; its chairman, Warlick Carr; its executive director, Rachel Martin; its director
of eligibility, Carol Smoot; the Supreme Court of Texas and its chief justice, Thomas Phillips. 
The trial court denied his requests for a declaratory judgment, a permanent injunction, and other
relief. We will affirm the judgment.



BACKGROUND


 Perales failed the bar examination repeatedly. His scores on Part I of the
examination missed the passing mark of 75 by less than a point in 1991 and 1992. Part I of the
examination consisted of the multistate bar examination (MBE) and the Texas essay questions,
while Part II of the examination covered civil and criminal practice and procedure. (1)

 Perales filed this suit after learning that the Board had, several times during the
1980s, raised the MBE score that equated to the passing mark of 75. In 1974, a supreme court
order set the 75-equivalent at 120. In 1980, the Board raised the 75-equivalent score to 121. For
February 1983, it became 126; for July 1983, 127; for July 1984, 128; for February 1986, 130;
for July 1992, 132; and for February 1994, 135. (2) 

 The 75-equivalent score on the MBE was an important element of the scoring
process because it affected the conversion of the raw scores from all sections of the examination
to the bar scale. The Board used the MBE scores to norm the scores of the other sections of the
examination using an equipercentile method. The Board took the raw scores from the other
sections of the test, grouped them into percentiles, and assigned them the value of the MBE scaled
score from the corresponding MBE percentile. To convert the scaled scores of the MBE and
essay portions of Part I into a scale on which 75 was passing, the Board added an applicant's
scaled scores on the MBE and essay portions and divided the sum by a particular divisor; that
divisor changed from 5.6 when the 75-equivalent MBE score was 130 to 5.686 when the 75-equivalent was 132. The Board then added 28.58 to the quotient to obtain the final score for Part
I.

 The impact of raising the 75-equivalent score is apparent when examining Perales's
July 1992 scores. With the 75-equivalent at 130, Perales would have scored 74.55; instead, his
score was 73.856. After his examination was regraded, his score with the 75-equivalent at 130
would have been 74.92 instead of the 74.216 he received. With the Board's policy of rounding
up scores of 74.5-74.99 to the passing score of 75, Perales would have passed in July 1992 had
the 75-equivalent remained 130.

 Perales's case centers on his complaint that the Board lacked the power to raise the
passing mark. He requested alternative declaratory judgments. He first requested a declaration
that the Supreme Court's rules did not authorize the Board alone to raise the passing score. He
alternatively requested that the rules be declared invalid if they authorized the Board's action. He
finally requested that the supreme court's raising of the passing score be invalidated and the bar
examination be declared discriminatory, unconstitutional, and unlawful. He requested a
permanent injunction reversing all actions that raised the passing score. He finally requested that
he be admitted to the State Bar of Texas on his old tests under the refigured passing score.

 The trial court held a hearing on his motion for a permanent injunction. At the
close of his presentation, the appellees moved for and received a directed verdict against all relief
sought.



DISCUSSION


 Perales raises two points of error, attacking the form and the substance of the
judgment.



THE FORM

 By his first point of error, Perales contends that the trial court erred because its
denial of his requested relief through a directed verdict failed to declare the rights of the parties. 
Trial courts have the power to affirmatively or negatively declare rights of parties. Tex. Civ.
Prac. & Rem. Code Ann. § 37.003 (West 1986). This court has reversed as inadequate a
summary judgment ordering only that plaintiff take nothing in a suit for declaratory judgment. 
University of Tex. v. National Collegiate Athletic Ass'n, 685 S.W.2d 409, 410-11 (Tex.
App.--Austin 1985, writ ref'd n.r.e.). We held that, because the judgment did not show which of
several possible bases of the motion for summary judgment the court adopted, we had no basis
on which to review the decision. Id.

 The NCAA case does not control this case. That case was a summary judgment
favoring the defendants rather than a directed verdict against the plaintiff. The appellant here lost
based on his failure to prove the merits of his case rather than losing based on one or more of
several unspecified bases asserted by the defendant; because the appellees here never introduced
evidence to support their claim of sovereign immunity, the judgment could not have been based
on that defense. The judgment here presents the clear, albeit implicit, basis on which to review
the judgment--the merits of the claim. The trial court's rejection of all of Perales's options leaves
no doubt that the court implicitly found the opposite of his requests, declaring that the Board had
the power to raise the 75-equivalent and that the administration of the bar examination withstands
the constitutional and legal challenges asserted by Perales. We overrule point one. 



THE SUBSTANCE

 By point of error two, Perales contends that the Board's raising of the passing score
on its own violates the supreme court's 1974 order setting a passing score and breaches the state
constitution's separation of powers provision. He also contends that the Board and the supreme
court acted outside their authority in taking and authorizing these steps. He contends that these
actions illegally caused him to fail the examination and not get his license, in violation of his
rights to due process and equal protection.

 His point of error directly attacks no action by the trial court, in violation of Tex.
R. Civ. P. 74(d). We broadly construe the point as an attack on the grant of the motion for
judgment. We review the entry of a declaratory judgment for abuse of discretion. See Bexar-Medina-Atascosa Counties Water Control and Improvement Dist. No. 1 v. Medina Lake Protection
Ass'n, 640 S.W.2d 778, 780 (Tex. App.--San Antonio 1982, writ ref'd n.r.e.).

 The legislature vested in the supreme court the exclusive power to license attorneys
and established the Board to assist the supreme court in this duty. The supreme court cannot
delegate its power to issue licenses. Tex. Gov't. Code Ann. § 82.021 (West 1988). The supreme
court may adopt rules on eligibility for examination and on the manner of the examination. Tex.
Gov't Code Ann. § 82.022 (West 1988). The supreme court's rulemaking power is exclusive and
not subject to the approval of the state bar. Tex. Gov't Code Ann. § 81.061 (West 1988). The
Board is required to examine each eligible candidate's qualifications to practice law. Tex. Gov't
Code Ann. § 82.004 (West 1988).

 Pursuant to this legislation, the supreme court adopted the Rules Governing
Admission to the Bar. Though the rules required a passing score of 75, they provided no
guidance as to how the Board was to score the examinations; indeed, they did not even provide
a scoring range. See Tex. R. Governing Bar Admission VII(e) (1991 & 1992). The rules allowed
the Board to make reasonable regulations, including written interpretations of the rules. Tex. R.
Governing Bar Admission XIII(d) (1991 & 1992). (3) The court also allowed the Board discretion
in interpreting and applying the rules. Tex. R. Governing Bar Admission XIII(e) (1991 & 1992). (4)

 The Board implemented all of the increases in the passing MBE score in the 1980s
without any amendment of these rules. Perales contends that the Board's effective raising of the 
passing score without supreme court approval was illegal and violated several state and federal
constitutional guarantees.



Legal objections

 Perales contends that the Board was not authorized to raise the passing score. 
Technically, the Board did not raise the passing score, which stayed at 75. Effectively, as
Perales's experience shows, the Board did raise the passing score.

 The legislature and the supreme court gave the Board great discretion in
administering the bar examination. The statute authorized the Board to conduct the exam, but
provided no guidance on the mechanics of that administration. The rules gave some guidance,
setting a passing score and describing the subjects, but did not specify scoring methods. The
Board had to create procedures to implement the policies outlined by the statutes and rules. 
Perales produced no evidence that the Board's action in setting and increasing the 75-equivalent
score was not a "reasonable regulation."

 Perales further contends that the action violated the 1974 supreme court order. 
Perales introduced no evidence of how the Board violated the order. He points to the supreme
court's 1994 amendments to the scoring rules as evidence that the Board's intervening increases
were invalid. Had the Board attempted to undertake changes as sweeping as the 1994
amendments--restructuring the exam, changing the scoring range--we might agree that it had
exceeded its authority. Instead, the Board increased the 75-equivalent without exceeding the
latitude accorded by the supreme court in its rules. If anything, the 1974 order and the 1994 rules
amendments indicate that, had the Board's actions violated the order, the supreme court would
have corrected that violation; its inaction indicates that the court found no such violation.



Constitutional objections

 Separation of powers. Perales contends that the supreme court's rules authorizing
the Board to interpret and to make regulations pursuant to the rules impinges on and usurps the
supreme court's power to admit bar applicants. He contends that the Board's raising of the score
does the same. 

 The rules did not breach the separation of powers. The separation of powers clause
requires that the legislative, judicial, and executive branches not take actions that impinge upon
one another's actions and authority. Tex. Const. art. 2, § 1. It does not foreclose an entity of
a particular branch from delegating authority to a subordinate entity within that branch. The
supreme court did not, by making rules governing admission to the bar, usurp or impinge upon
its own authority to make those rules. The supreme court did not delegate the duty of issuing
licenses, deemed non-delegable by the legislature. 

 The Board's action likewise did not violate the separation of powers. The Board
draws its power and funding from the court. See Tex. Gov't Code Ann. §§ 82.004-5 (West
1988). The Board, acting pursuant to those regulations, was a subordinate, not a separate, entity. 
To the extent that it took actions reserved to the judicial branch, it did not impinge upon the
authority of a different branch of government.

 Republican form of government. Perales also contends the rules violate the right
to a republican form of government. U.S. Const. art. IV, § 4. We have just discussed this attack
to the extent it concerns the separation of powers. Otherwise, an individual's challenge to this
provision does not present a justiciable controversy. See Baker v. Carr, 369 U.S. 186, 218-27
(1962).

 Due process. Perales contends that the Board's setting of the passing score violates
his rights of due process under the federal and state due process and equal protection guarantees. 
U.S. Const. Amend. XIV; Tex. Const. art. I, § 19. The trial court must determine whether any
constitutionally protected life, liberty, or property interest has been implicated; (5) determine what
process is due; and determine whether the requisite procedural protection has been accorded. 
Sullivan v. University Interscholastic League, 599 S.W.2d 860, 863 (Tex. Civ. App.--Austin
1980), aff'd in part, rev'd in part on other grounds, 616 S.W.2d 170 (Tex. 1981). Perales's
claim could only be interpreted as a claim for a deprivation of property.

 Perales failed to produce evidence of a property right. He had no vested right to
a license. His expectation that the former score standards would persist did not rise to the level
of a vested right to have his examination scored under those standards. See State Bar of Texas
v. Sutherland, 766 S.W.2d 340, 343-44 (Tex. App.--El Paso 1989, writ denied). He had at most
an expectation that he would have the right to apply for admission to the bar. See id.

 Nor did Perales show how he was deprived of due process. Though he claimed
he was given no notice of the heightened standards, he did not show that he was due any notice
of the increase. He adduced no evidence demonstrating how the process accorded him was
deficient.

 Equal protection. Perales contends that the Board's setting of the passing score
violates his rights to equal protection under the federal and state equal protection guarantees. 
U.S. Const. Amend. XIV; Tex. Const. art. I, §§ 3, 3a. The test under both constitutions is
whether a regulation treats similarly situated persons differently without a rational basis. Bullock
v. Regular Veterans Ass'n of the United States, Post No. 76, 806 S.W.2d 311, 313 (Tex.
App.--Austin 1991, no writ).

 Perales failed to show that his examination was scored differently from other bar
examinees. He failed to introduce evidence that the test discriminated against his ethnic group
beyond saying that he had read that minorities were adversely affected by the raising of the score;
he did not introduce those sources or their underlying statistics. He introduced no evidence to
show that the heightened standard was irrational.

 We find that, because Perales did not introduce evidence to entitle him to his
requested declaratory judgment, the court did not err by flatly rejecting his request.

 We must also review the rejection of the permanent injunction. Injunctions are
available if the seeker is entitled to the relief demanded and some action is about to be taken that
would prejudice his relief in a way that eliminates other adequate alternative relief at law. Tex.
Civ. Prac. & Rem. Code Ann. § 65.011 (West 1986). We review the denial of an injunction for
abuse of discretion. Risk Managers Int'l, Inc. v. State, 858 S.W.2d 567, 579-80 (Tex.
App.--Austin 1993, writ denied). Because Perales failed to show himself entitled to his requested
declaration, the court did not abuse its discretion in rejecting his request for a concomitant
injunction.

 We overrule point of error two.



CONCLUSION


 The trial court's judgment was not afflicted with the formal or substantive
infirmities that Perales asserts. We affirm the judgment.


Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: May 17, 1995

Do Not Publish

1.   In 1991 and 1992, the description of the bar examination was located in Rules
Governing Admission to the Bar VII(e). Amendments in 1993 renumbered this rule as
Rule XI(e). The 1994 amendments to Rule XI(e) specifically call for the administration of
the MBE and restructure the scoring to require a combined score of 675 out of 1000 to
pass.
2.   The 1994 amendments merged the two-part exam into a single score derived from
scores on three sections. An applicant can pass the exam by scoring 135 on each section. 
The rule calls for the continued scaling to the MBE scale of the raw scores from the Texas
Essays and the Procedure and Evidence exams. Tex. R. Governing Bar Admission XI(e)
(1994). The rule then weights the scores by multiplying the MBE score and the Texas
Essays score by two and multiplying the Procedure and Evidence score by one. An
applicant passes if the sum of the products equals or exceeds 675 out of a possible 1000. 
3.   This provision moved in 1993 to Rule XX(d).
4.   This provision moved in 1993 to Rule XX(e).
5. The Texas provision also protects against disfranchisement and deprivation of privileges
and immunities.