[No. B182681. Second Dist., Div. Six. Aug. 2, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MILTON PARKER, Defendant and Appellant.

## Counsel

Stein & Casciola, Jeffrey R. Stein; and Dan Mrotek for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Robert F. Katz and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**PERREN, J.**—Joseph Milton Parker appeals from the order denying his petition for a certificate of rehabilitation and pardon. (Pen. Code, § 4852.01 et seq.)[1] Parker, an Arizona resident, contends that the statute's five-year California residency requirement violates his constitutional right to travel by providing for disparate treatment of resident and nonresident ex-felons.

We conclude that the residency requirement does not burden Parker's constitutional right to travel. California has a legitimate and substantial governmental interest in requiring five years of residency in order to evaluate the conduct critical to a determination of whether a petitioner is entitled to a certificate stating that he or she is rehabilitated and worthy of a pardon. We affirm.

---

[1] All statutory references are to the Penal Code.

## FACTS AND PROCEDURAL HISTORY

In 1989, Parker was convicted in San Luis Obispo County of the felonies of unlawful sexual intercourse with a minor (§ 261.5), and enticing a female under 18 years of age for purposes of prostitution or illicit sexual intercourse (§ 266). Parker was granted probation including a term in county jail. In 1990, Parker ended his residence in California and established a new residence in Arizona. He has been an Arizona resident since 1990.

In 1994, Parker completed his period of probation. In 2000, the trial court ordered that Parker's convictions be designated as misdemeanors pursuant to section 17, subdivision (b). In December 2003, the trial court granted his petition for withdrawal of his plea and dismissal of the 1989 charges pursuant to sections 1203.4 and 1203.4a.

In 2004, Parker filed a petition for certificate of rehabilitation and pardon. (§ 4852.01, subd. (c).) On February 17, 2005, the trial court denied the petition. The court ruled that, as an Arizona resident, Parker did not fulfill the requirement that a petitioner reside in the State of California for a period of five years prior to filing the petition. The court also determined that the residency requirement was constitutional.

Parker filed a timely appeal from the February 17, 2005, order.

### *Certificate of Rehabilitation and Pardon*

A certificate of rehabilitation and pardon (certificate of rehabilitation) is a recommendation to the Governor to pardon a convicted felon and restore the civil and political rights of citizenship that had been removed or limited by the felony conviction. (§ 4852.13, subd. (a); *People v. Ansell* (2001) 25 Cal.4th 868, 872–876 [108 Cal.Rptr.2d 145, 24 P.3d 1174].)[2] The certificate is available to felons who have completed their sentences and an extended period of rehabilitation, and who have resided in California for a period of not less than five years immediately preceding the filing of the petition. (§§ 4852.01, 4852.03, 4852.06.) Also, a person, such as Parker, who was convicted of an offense specified in section 290, may not file a petition for a certificate of rehabilitation unless the conviction has been dismissed under section 1203.4. (§ 4852.01, subd. (c).)[3]

---

[2] A felon may also petition the Governor directly for a pardon. (See § 4800 et seq.)

[3] Section 4852.01, subdivision (c) provides: "Any person convicted of a felony or any person who is convicted of a misdemeanor violation of any sex offense specified in Section 290, the accusatory pleading of which has been dismissed pursuant to Section 1203.4, may file a petition for certificate of rehabilitation and pardon pursuant to the provisions of this chapter if the petitioner has not been incarcerated in any prison, jail, detention facility, or other penal

After the filing of the petition, the trial court "may require such testimony as it deems necessary," the production of "all records and reports relating to the petitioner and the crime of which he was convicted," and "written reports or records" from any "law enforcement agency concerning the conduct of the petitioner since his release on probation or parole or discharge from custody." (§ 4852.1.) In addition, the court "may request from the district attorney an investigation of the residence of the petitioner, the criminal record of the petitioner as shown by the records of the Department of Justice, any representation made to the court by the applicant, the conduct of the petitioner during his period of rehabilitation . . . , and any other information the court may deem necessary in making its determination." (§ 4852.12.)

■ To grant the petition, the trial court must find the petitioner has lived "an honest and upright life" with "sobriety and industry," exhibited "a good moral character," and obeyed the law during the rehabilitation period. (§ 4852.05.) A certificate cannot be granted to a person convicted of a section 290 offense "if the court determines that the petitioner presents a continuing threat to minors of committing any of the offenses specified in Section 290." (§ 4852.13, subd. (b).)

The decision to grant the petition is discretionary and the standards for a finding of rehabilitation are "high." (*People v. Ansell, supra,* 25 Cal.4th at p. 887.) Ultimately, the decision to pardon the petitioner rests with the Governor. (*Id.,* at p. 891.)

## DISCUSSION

Parker contends that the five-year residency requirement for obtaining a certificate of rehabilitation violates his constitutional right to travel under the privileges and immunities and equal protection clauses of the United States Constitution. (U.S. Const., art. IV, § 2; *id.,* 14th Amend.) Parker also contends that the residency requirement should be reviewed under the "strict scrutiny" standard or, if that contention fails, under the "substantial reason" standard set forth in *Toomer v. Witsell* (1948) 334 U.S. 385, 396 [92 L.Ed. 1460, 68 S.Ct. 1156]. We disagree.

■ We conclude that the section 4852.01 residency requirement does not burden Parker's constitutional right to travel, and does not require review under the strict scrutiny standard or the intermediate substantial reason

institution or agency since the dismissal of the accusatory pleading and is not on probation for the commission of any other felony, and the petitioner presents satisfactory evidence of five years residence in this state prior to the filing of the petition."

standard. As we will explain, the residency requirement does not impose an impermissible penalty on the right to travel or create an impermissible classification in violation of the equal protection clause. It does not restrict exit from or entry into California and is directly related to the state's interest and duty to protect the public safety interests of its citizens.

In *Saenz v. Roe* (1999) 526 U.S. 489 [143 L.Ed.2d 689, 119 S.Ct. 1518] (*Saenz*), the principal case relied on by Parker, the United States Supreme Court divided the constitutional right to interstate travel into three components. "It protects [1] the right of a citizen of one State to enter and to leave another State, [2] the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, [3] for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." (*Id.*, at p. 500.)

*Saenz* did not discuss the first component, which is not implicated in the instant case, but did discuss the second and third components. *Saenz* concluded that the second component provides protections for nonresidents who enter a state temporarily for employment, medical services, or other reasons, and is based on the privileges and immunities clause of the United States Constitution.[4] (*Saenz, supra,* 526 U.S. at pp. 501–502.) "[B]y virtue of a person's state citizenship, a citizen of one State who travels in other States, intending to return home at the end of his journey, is entitled to enjoy the 'Privileges and Immunities of Citizens in the several States' that he visits." (*Id.*, at p. 501, fn. omitted.)

*Saenz* concluded that the third component, a resident's right to be free of discrimination based on length of residency, is based on the privileges and immunities clause contained in the Fourteenth Amendment to the United States Constitution.[5] (*Saenz, supra,* 526 U.S. at pp. 502–503.) *Saenz* is a third component case, and concerns a California statute that limits welfare benefits of new residents during their first year of residency to the amount they would have received in their former state of residence. (*Id.*, at p. 492.) The Supreme Court held that the statute unconstitutionally discriminated between old and newly arrived residents of California. (*Id.,* at p. 505.)

---

[4] "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." (U.S. Const., art. IV, § 2, cl. 1.)

[5] The Fourteenth Amendment includes a second privileges and immunities clause. In relevant part, it provides: "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States . . . ."

Although *Saenz* redirected the constitutional basis of the right to travel from the equal protection to the privileges and immunities clause, the court, as in prior cases, concluded that third component cases are reviewed under the "strict scrutiny" standard developed in equal protection cases. (*Saenz, supra,* 526 U.S. at p. 506, citing *Shapiro v. Thompson* (1969) 394 U.S. 618, 634 [22 L.Ed.2d 600, 89 S.Ct. 1322] [discriminatory treatment of residents is unconstitutional unless necessary to promote a compelling government interest].) The court concluded that the Fourteenth Amendment " 'does not allow for, degrees of [state] citizenship based on length of residence.' " (*Saenz, supra,* at p. 506.)

In second component cases, however, a classification that impacts the right to travel does not require strict scrutiny review. *Saenz* emphasizes that the protections provided by the privileges and immunities clause for nonresidents while in another state are not absolute. (*Saenz, supra,* 526 U.S. at pp. 501–502.) Disparate treatment of nonresidents who are in the state temporarily is permissible if there is a " 'substantial reason' " for the disparate treatment " '. . . beyond the mere fact that they are citizens of other States.' " (526 U.S. at p. 502, citing *Toomer v. Witsell, supra,* 334 U.S. at p. 396.)

Indisputably, the instant case is not a first or third component case because Parker is not a resident of California and is not claiming a burden on his right, as an Arizona resident, to enter or leave California. Parker argues that the case involves the second component of the right to travel, but Parker does not fit that component either. Parker left California in 1990 and, based on the record, has never returned. He claims temporary visitor status because he filed his petition in California, but *Saenz* and other cases make it clear that there must be a physical presence in the state and a connection between that presence and application of the law being challenged. (*Saenz, supra,* 526 U.S. at pp. 501–502; *Vlandis v. Kline* (1973) 412 U.S. 441, 442, 452 [37 L.Ed.2d 63, 93 S.Ct. 2230]; *Toomer v. Witsell, supra,* 334 U.S. at p. 387.)

In any event, Parker's brief reveals that his challenge to the section 4852.01 residency requirement does not focus on his purported status as a temporary visitor to California. Parker contends that his constitutional right to travel includes the right to leave, not just enter, a state. He argues that section 4852.01 impeded his right to abandon his California residency in order to establish a new residence in Arizona, and created an impermissible distinction between felons who leave the state after completion of their sentences and felons who remain in California.

A person has the right to leave one state and enter another state to establish a new residence or for any other purpose, but section 4852.01 does not and did not impede Parker's right to leave California. He retained and exercised his right to travel among the states and reside in a state of his own choosing. "[S]tate law implicates the right to travel when it actually deters such travel, . . . when impeding travel is its primary objective, . . . or when it uses ' "any classification which serves to penalize the exercise of that right." ' " (*Attorney General of N. Y. v. Soto-Lopez* (1986) 476 U.S. 898, 903 [90 L.Ed.2d 899, 106 S.Ct. 2317], citations omitted.)

In essence, Parker is contending that, as a former California resident, he carried California rights with him when he left the state, and can assert those rights as a former resident. Parker claims the right to travel preserves the right of an individual who emigrates from a state to utilize statutory procedures provided by that state on equal terms as current residents.

This position is contrary to relevant legal authority. The obligations imposed on a state to treat temporary visitors without discrimination and grant prompt recognition to a newly arrived resident do not impose a reverse obligation on a state to continue to care for its former residents. (*Califano v. Torres* (1978) 435 U.S. 1 [55 L.Ed.2d 65, 98 S.Ct. 906]; *Fisher v. Reiser* (9th Cir. 1979) 610 F.2d 629, cert. den. (1980) 447 U.S. 930 [65 L.Ed.2d 1124, 100 S.Ct. 3029].)

In *Califano*, the Supreme Court held that a new resident of Puerto Rico was not entitled to receive benefits greater than those received by other Puerto Ricans because the person's former state of residence provides greater benefits to its residents. "This Court has never held that the constitutional right to travel embraces any such doctrine, and we decline to do so now. Such a doctrine would apply with equal force to any benefits a State might provide for its residents, and would require a State to continue to pay those benefits indefinitely to any persons who had once resided there. And the broader implications of such a doctrine in other areas of substantive law would bid fair to destroy the independent power of each State under our Constitution to enact laws uniformly applicable to all of its residents." (*Califano v. Torres, supra,* 435 U.S. at pp. 4–5, fn. omitted.)

*Fisher v. Reiser, supra,* 610 F.2d at page 633, reached a similar conclusion that the denial of benefits to a former resident did not burden the former resident's right to travel. In *Fisher,* the Nevada workers' compensation benefits program provided benefits to injured employees regardless of where they resided after the injury. After qualifying for benefits, a Nevada resident and his wife moved to California. While they were California residents, Nevada amended its program to allow cost of living increases for its residents, but not for nonresidents.

The Ninth Circuit held that the denial of the cost of living increases did not penalize the travel and equal protection rights of former residents. The court noted that a state cannot discriminate against new residents, but stated that "here the claimants seek to enforce an obligation against the state of former residence. The distinction is critical. Any primary obligation to ascertain a citizen's economic status or condition and to make provision for his or her well being falls upon the state of current residence, not the state where the citizen formerly resided. It is a fact of our federal system that a state is limited both in its competence and its responsibility to exercising its welfare powers for those persons who are its residents, and, perhaps in some cases, those temporarily within its borders. We find no authority for the broad proposition that Nevada must pass prospective legislation with reference to the subsistence or economic well being of persons formerly residing in it but who are now resident elsewhere, or include former residents in statutes passed to aid current residents." (*Fisher v. Reiser, supra,* 610 F.2d at p. 633, fn. omitted; see also *Niedle v. Workers' Comp. Appeals Bd.* (2001) 87 Cal.App.4th 283 [104 Cal.Rptr.2d 534] [applying the *Fisher* analysis to uphold denial of benefits to a former California resident].)

 Even if we treat this case as analogous to the second component of the right to travel as set forth in *Saenz,* we would uphold the section 4852.01 residency requirement. As Parker argues, the privileges and immunities clause prohibits "discrimination against citizens of other States where there is no *substantial reason* for the discrimination beyond the mere fact that they are citizens of other States." (*Toomer v. Witsell, supra,* 334 U.S. at p. 396, italics added.) But "disparity of treatment" is permitted "where there are perfectly valid independent reasons for it," and "there is something to indicate that non-citizens constitute a peculiar source of the evil at which the statute is aimed." (*Id.,* at pp. 396, 398.)

Moreover, equal treatment of residents and nonresidents is required "[o]nly with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity . . . ." (*Baldwin v. Montana Fish and Game Comm'n* (1978) 436 U.S. 371, 383, 390–391 [56 L.Ed.2d 354, 98 S.Ct. 1852]; see also *Supreme Court of Virginia v. Friedman* (1988) 487 U.S. 59, 64 [101 L.Ed.2d 56, 108 S.Ct. 2260].) Distinctions that hinder the formation, purpose, or development of a single union of states are prohibited, not distinctions that merely reflect the fact that the nation is composed of states. (*Baldwin, supra,* at p. 383.)

 The substantial reason test does not apply in the instant case because Parker is not asserting a fundamental right bearing on the vitality of the nation. Parker claims the residency requirement had a fundamental impact on his right to travel because his purpose in leaving California was to establish a

new residence in Arizona. But the right being asserted is not the right to change residence, but rather the right to obtain a certificate of rehabilitation without being a California resident. (See *People v. Jones* (1985) 176 Cal.App.3d 120, 126–127 [221 Cal.Rptr. 382] [right to a pardon is not fundamental]; see also *Herrera v. Collins* (1993) 506 U.S. 390, 414 [122 L.Ed.2d 203, 113 S.Ct. 853] [a state is not constitutionally required to enact any clemency or pardon procedures].) In addition, there is no authority that draws a distinction based on the purpose of travel or that makes travel for the purpose of establishing a new home a more fundamental right than travel for some other purpose.

■ We also reject Parker's argument that he was denied his fundamental right of access to the courts. Parker had access to the courts to the extent of filing and obtaining a ruling on his petition, and retains the ability to refile a petition and obtain an order on the substantive merits if he satisfies the residency requirement. Moreover, a state has the right to require a significant attachment to the state as a condition of obtaining substantive relief in its courts. (See *Sosna v. Iowa* (1975) 419 U.S. 393, 406–407 [42 L.Ed.2d 532, 95 S.Ct. 553].)

■ Accordingly, the section 4852.01 residency requirement is reviewable under the "rational basis" test traditionally utilized in equal protection cases. When an equal protection case does not involve a suspect classification such as race and does not infringe on a fundamental right, the legislative classification will be upheld whenever it has a rational relationship to a legitimate state interest. (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439–440 [87 L.Ed.2d 313, 105 S.Ct. 3249]; *Bowens v. Superior Court* (1991) 1 Cal.4th 36, 42–43 [2 Cal.Rptr.2d 376, 820 P.2d 600].) This is true even if the law seems unwise or works to the disadvantage of a particular group. (*Romer v. Evans* (1996) 517 U.S. 620 [134 L.Ed.2d 855, 116 S.Ct. 1620].)

California has a compelling interest in granting certificates of rehabilitation only to deserving individuals. Requiring a significant period of residency in California bears a rational and legitimate relationship to achieving that goal. In this respect, the residency requirement is dissimilar to the residency requirements that have been found invalid in other cases. Unlike those requirements, the section 4852.01 residency requirement is an important element in the substantive determination of whether a petitioner has been sufficiently rehabilitated to justify the benefit provided by the statute.

■ As Parker contends, evidence that a petitioner "has not been incarcerated in any prison, jail, detention facility, or other penal institution or agency" (§ 4852.01, subd. (c)) may be available from out-of-state law

enforcement agencies. California's interest, however, is not limited to establishing the absence of a criminal record. The state must be assured that the court receives unequivocal evidence that the individual has achieved the temperament and character necessary before the court grants a certificate of rehabilitation or the Governor grants a pardon. The court must make findings that the petitioner has lived an "honest and upright life," "conduct[ed] himself or herself with sobriety and industry," and exhibited a "good moral character." (§ 4852.05.)

To this end, the statutory scheme directs the court and agencies assisting the court to obtain a wide variety of relevant behavioral information. The Legislature reasonably has determined that a petitioner's activities can be more effectively monitored and evaluated if he or she actually spends time in California, and that the evaluation will be impeded if the petitioner remains outside the state for virtually the entire period of rehabilitation. The Legislature could reasonably conclude that the residency requirement substantially increases the likelihood that law enforcement and the court will be alerted to facts that cast doubt on a person's qualification for a certificate of rehabilitation.

Parker argues that there are less restrictive measures that might achieve the state's purposes, such as requiring nonresident felons to provide background information regarding themselves, and imposing a fee on nonresident petitions in order to shift the cost of investigation. We agree that the availability of less restrictive means should be considered in evaluating the relationship between the disparate treatment of resident and nonresident felons and the state's legitimate interest. (*Supreme Court of Virginia v. Friedman, supra,* 487 U.S. at pp. 63–64.)

In this case, however, there is no basis to conclude that the measures suggested by Parker would be effective. Self-reporting has obvious pitfalls. And there is no basis to conclude that other states and multistate databases can provide the information necessary to achieve the purpose of the California statutory scheme, or that other states have any incentive to report relevant conduct.

 Accordingly, the record establishes a reasonable relationship between the residency requirement and an important governmental interest. In fact, although not necessary for our determination, the record also supports the conclusion that the residency requirement meets the "substantial reason" test because it is substantially related to the state's objective and pertains to

the particular problem posed by nonresident petitioners. (See *Supreme Court of New Hampshire v. Piper* (1985) 470 U.S. 274, 284 [84 L.Ed.2d 205, 105 S.Ct. 1272]; *Toomer v. Witsell, supra,* 334 U.S. at pp. 396–398.)

The judgment (order) is affirmed.

Gilbert, P. J., and Coffee, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 2006, S146260.