Filed 10/8/15  P. v. King CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SPENCER EUGENE KING,<br><br>    Defendant and Appellant. | 2d Crim. No. B261699<br>(Super. Ct. No. 2013023935)<br>(Ventura County) |

Spencer Eugene King appeals a victim restitution order, imposed pursuant to a written plea agreement, after his plea of guilty to continuous sexual abuse of a child under 14 years of age (Pen. Code, § 288.5, subd. (a), count 1)[1] and anal and genital penetration by foreign object with force (§ 289, subd. (a)(1), count 2). He admitted allegations as to the count 1 continuous sexual abuse of a child that he committed "three and more acts in violation of [s]ection 288," with a child under the age of 14 years, and that the crime involved substantial sexual conduct with the victim (§ 1203.066, subd. (a)(8)).  He further admitted that he committed count 2 when the victim was under 18 years of age (§ 801.1, subd (a)).  The trial court sentenced him to nine years in prison and ordered him to pay restitution to the victim, including

---

[1] All statutory references are to the Penal Code unless otherwise stated.

$450,000 for noneconomic losses. Appellant contends: (1) the trial court lacked jurisdiction to award the victim noneconomic restitution; (2) the restitution proceedings violated his constitutional rights to equal protection, a jury trial and due process; and (3) his counsel's failure to object to the noneconomic restitution award constituted ineffective assistance of counsel. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Prosecution Case[2]

A., the victim, is the daughter of appellant's long-term girlfriend. A. and her family lived with appellant for about 10 years, beginning when A. was 7 years old. A. was 21 years old when she testified at the preliminary hearing.

A. testified that when she was eight years old, she was asleep one night and awakened when appellant entered her room. She feigned sleep as appellant approached her bed, reached under the covers and touched A.'s vaginal area, over her pajamas. She "was really scared [and] couldn't move or speak." She "literally lost [her] voice, like [she] was paralyzed."

A. testified about another incident that occurred when she was eight years old. A. was at home while her family was out. She was on the bed in her mother's and appellant's room. Appellant returned first, entered the room, approached the bed, pulled down A's pants and underwear, and touched her vagina. When A. tried to get away, appellant held her down. The incident lasted for at least five or ten minutes.

A. recalled a third incident that occurred when she was still eight years old. She entered the garage to get something. Appellant was in the doorway. He exposed his erect penis, "grabbed" her hand and made her touch it. She did not think she could get away, but appellant "eventually" let her go.

---

[2] Because appellant pleaded guilty, the facts are derived from the preliminary hearing, and the letter that the victim sent to the trial court before appellant's sentencing.

A.'s breasts had developed when she was about 12 years old. Sometime after that, appellant grabbed her chest. He would "pull [her] shirt down or up," to expose her breasts. He also touched her breasts, usually "over clothing."

A. testified about a 2009 incident that occurred in the kitchen, when she was 16. Appellant cornered her against a counter, put his hands down her pants and underwear, and put his finger inside her vagina. He told her to "trim" her "pubic hair," and said "it would look nicer if it was groomed." She scratched at him and bit his arm. She could not get away from appellant because he used "the weight of his body to keep [her] in that corner."

A. could not describe the details of each incident when appellant touched her inappropriately. She nonetheless knew that "other incidents happened" after she was eight years old and before she entered high school. She recalled "a lot of little things . . . like quick touching of [her] vagina or . . . a moment where [appellant] exposed himself to [her] when no one else was around." When A. was 15 or 16, appellant entered a room where she was watching television and masturbated in front of her. He had done that before.

A. felt a "tremendous amount of fear" at home. At school, she "felt like [she] always had to hide something." "She never wanted to invite [her] friends . . . to her house because [she] was afraid that something might happen while they were there." "Those feelings of anxiety . . . increasingly got worse as she got older."

In the spring of 2013, A. asked her mother for money to purchase art supplies and other items. Unaware of appellant's inappropriate conduct, her mother told A. to ask him for the money. She did. Appellant asked A. what she would do for him, and suggested that she send him pictures of herself in her bathing suit. She sent appellant emails and text messages, and attached three photos in which she wore a bikini. He requested a photo of her "behind" which she sent him. He telephoned her after he transferred the money. "He said that he had received [her] photos and [she] was beautiful and sexy." During the telephone call, A. could hear appellant "masturbating." She "heard heavy breathing and the motion of masturbation."

In July 2013, during a face-to-face conversation with appellant, A. referred to several specific incidents of his having inappropriately touched her, including the incident in her bedroom when she was eight years old, and the 2009 incident in her kitchen.[3]  Appellant recalled the incidents and apologized to A.  He claimed he was not attracted to her when she was eight years old, but admitted he was attracted to her later.  He laughed when they discussed the 2009 incident.  He said that he had been sexually attracted to A. for some time, and it was confusing.  He said that when A. was younger he told her he loved her even more than he loved her mother.

*Plea and Restitution Proceedings*

Following his preliminary hearing, appellant signed a plea agreement dated October 15, 2014.  He also initialed several of its provisions, including one which contained the following admission:  "I did what is alleged in the counts of the . . . (information) to which I am pleading guilty."  Count 1 of the information alleges that he committed the crime of continuous sexual abuse, in violation of section 288.5, subdivision (a) and unlawfully engaged in "three and more acts" in violation of section 288 with A., "a child under the age of 14."  Appellant also initialed the provision in the plea agreement which stated:  "For violation[s] of Penal Code section 288, the court will order me to pay restitution to the victim(s) for noneconomic losses, including but not limited to pain, suffering and emotional distress for psychological harm.  (Pen. Code, § 1202.4(f)(3)(F).)"  The plea agreement further stated that appellant's maximum potential sentence was 24 years.  Before he entered his plea, appellant acknowledged that maximum potential sentence and his understanding that the trial court would sentence him to prison for nine years.

On January 7, 2015, the prosecution filed a brief requesting that the court order appellant to pay the victim noneconomic damages in the amount of $450,000.

---

[3] A. and her mother met with Ventura Police Detective Kenny Welch sometime after appellant's spring, 2013 communications with A.  In July 2013, Welch went to a beach where A. met appellant.  A. wore a body wire that transmitted and recorded her conversation with appellant.  Welch testified at the preliminary hearing.

4

On January 8, 2015, appellant pleaded guilty to counts 1 and 2 and admitted that he "did what is alleged in the counts of the . . . (information) to which [he was] pleading guilty." The prosecution presented a December 31, 2014 letter from A. to the trial court. A.'s letter explained that as a consequence of appellant's conduct, she had suffered and continued to suffer from severe panic attacks, depression, terror, paralyzing fear, and difficulty maintaining relationships. The court sentenced appellant to nine years in prison, and imposed multiple fines and fees.

On January 27, 2015, the trial court conducted restitution proceedings. After hearing argument, the court ordered appellant to pay direct victim restitution, including noneconomic restitution of $450,000, and economic restitution of $21,724.

## DISCUSSION

### *Jurisdiction*

Appellant contends that the trial court lacked jurisdiction to award the victim noneconomic restitution. More specifically, he contends that because he was not convicted of violating section 288, the court had no authority to award such damages under section 1202.4, subdivision (f)(3)(F). We disagree.

The California Constitution provides crime victims with the right to restitution and consequently requires the trial court to order a convicted defendant to pay restitution in every case in which a crime victim suffers a loss. (Cal. Const., art. 1, § 28, subd. (b)(13)(B).) To implement this requirement, section 1202.4, subdivision (f) generally provides that in every case in which a victim has suffered economic loss as a result of the defendant's misconduct, the court shall require that the defendant make restitution to the victim in an amount established by court order, based upon the amount of loss claimed by the victim or upon any other showing to the court. (*People v. Giordano* (2007) 42 Cal.4th 644, 651-652.)

With one exception, restitution orders are limited to the victim's economic damages. The exception is for "[n]oneconomic losses, including, but not limited to, psychological harm, for felony violations of [s]ection 288." (§ 1202.4, subd. (f)(3)(F); *People v. Smith* (2011) 198 Cal.App. 4th 415, 431.)

5

A defendant has the right to a hearing in the trial court to dispute the amount of restitution. (§ 1202.4, subd. (f)(1).) The standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.) Moreover, section 1202.4 does not require a particular type of proof. (*Gemelli*, at pp. 1542-1543.) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.]" (*Id.*, at p. 1543.) On appeal, we review the court's restitution order for an abuse of discretion. (*People v. Giordano*, *supra*, 42 Cal.4th at p. 663 [the deferential abuse of discretion standard considers whether the challenged order is reasonable].)

"When interpreting statutes, we begin with the plain, commonsense meaning of the language used by the legislature. If the language is unambiguous, the plain meaning controls." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1131.)

There is nothing ambiguous in the language of section 1202.4, subdivision (f)(3)(F). It provides restitution for noneconomic losses "for felony *violations* of [s]ection 288." (*Ibid*; italics added). Appellant does not and cannot dispute that the violation of section 288 which he admitted was a felony. (§§ 288.5, subd. (a)(1); 288, subd. (a)(1).)

Despite the unambiguous language of section 1202.4, subdivision (f)(3)(F), appellant argues that a defendant cannot be ordered to pay noneconomic losses unless he has been *convicted* of violating section 288. In so arguing, he relies on subdivision (a)(1) of section 1202.4, which provides: "It is the intent of the Legislature that a victim of a crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." By its explicit terms, however, subdivision (a)(1) applies to awards of "economic losses." It does not apply to noneconomic losses.

Appellant admitted "three and more" felony violations of section 288, as alleged in the information, when he pleaded guilty to count 1 of the information. The

6

noneconomic loss provision of section 1202.4 authorizes a court to award noneconomic losses for such violations.  The trial court had jurisdiction to order appellant to pay restitution for noneconomic losses.  (§ 1202.4, subd. (f)(3)(F).)

*Constitutional Claims*

Appellant also contends that the noneconomic restitution order violates his right to equal protection under the federal and state Constitutions.  More specifically, he argues that section 1202.4, subdivision (f)(3)(F) violates equal protection because it unfairly distinguishes between those who are "convicted of a violation of section 288" and thus subject to noneconomic restitution orders, and those who are convicted of other crimes, and not subject to such orders.  As respondent asserts, appellant forfeited this claim by failing to raise it below.  (*People v. Romero* (2008) 44 Cal.4th 386, 411.)  Moreover, the claim lacks merit.

"When an equal protection case does not involve a suspect classification such as race and does not infringe on a fundamental right, the legislative classification will be upheld whenever it has a rational relationship to a legitimate state interest." *(People v. Parker* (2006) 141 Cal.App.4th 1297, 1309.)  As the Third District recognized in *People v. Smith*, *supra*, 198 Cal.App.4th, page 435, section 1202.4, subdivision (f)(3)(F) serves a legitimate public interest:  "Enacted as part of a broader effort to protect child victims of sexual abuse (Stats.1995, ch. 313, § 5), the noneconomic loss provision of section 1202.4 [serves the legitimate public interest of helping] to protect child victims of sexual abuse . . . by compensating those victims for psychological harm.  Differentiating between [such] victims and other victims is rational based on the vulnerability of children in general and society's interest in protecting children."

In claiming that section 1202.4, subdivision (f)(3)(F) serves no rational purpose, appellant stresses that the noneconomic loss provision of section 1202.4 does not apply to *all* sex crimes involving child victims.  That does not render the provision arbitrary or irrational.  "When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have

7

made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends.' [Citation.]" (*People v. Turnage* (2012) 55 Cal.4th 62, 77.) The noneconomic loss provision of section 1202.4 passes the rational basis test and does not violate equal protection. (*People v. Smith*, *supra*, 198 Cal.App.4th at p. 435.)

Appellant also contends that the restitution proceedings deprived him of his constitutional rights to have a jury decide the amount of the restitution award, and to due process of law. He forfeited these claims by failing to raise them below. (*People v. Romero*, *supra*, 44 Cal.4th at p. 411.) In any event, his claims lack merit. There is no right to a jury trial in restitution proceedings. (*People v. Wasbotten* (2014) 225 Cal.App.4th 306, 308-309.) Appellant was not denied due process of law by the trial court's restitution order. Prior to pleading guilty, he signed a plea agreement that stated the court would award noneconomic restitution for violations of section 288. He admitted "three and more" violations of section 288 in pleading guilty to count 1 as charged. Weeks before the restitution hearing, the prosecution filed a brief which requested noneconomic damages of $450,000. Appellant attended that hearing, with counsel who argued on his behalf, and challenged the amount of the proposed award. After hearing his argument, the court awarded the victim restitution of $450,000 for her noneconomic losses.

*Ineffective Assistance of Counsel Claim*

Appellant further contends that he was deprived of the effective assistance of counsel in the trial court because his counsel failed to raise the claims which appellant now presents to this court. We disagree. To show ineffective assistance of counsel, the defendant must establish (1) that counsel's representation fell below an objective standard of reasonableness, and (2) a reasonable probability that, but for counsel's errors, the defendant would have achieved a more favorable result. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-694; *People v. Holt* (1997) 15 Cal.4th 619, 703.) Appellant has failed to establish by any specific examples that his counsel's representation was deficient, or that there is a reasonable probability that

8

appellant would have achieved a more favorable result but for the purported shortcomings in counsel's performance.

DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Patricia M. Murphy, Judge

Superior Court County of Ventura
_____

Wallin & Klarich, Stephen D. Klarich for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Michael Katz, Deputy Attorney General, for Plaintiff and Respondent.