Filed 8/13/21  P. v. Cruz CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GERARDO VALLE CRUZ,<br><br>    Defendant and Appellant. | A157823<br><br>(Contra Costa County Super. Ct. No. 5-172099-4) |

Defendant Gerardo Valle Cruz was convicted after a jury trial of numerous sexual offenses against two victims, including multiple counts of forcible lewd and lascivious conduct with a child under 14 years of age, in violation of Penal Code section 288, subdivision (b)(1).[1]  He challenges an order that he pay a total of $450,000 in direct victim restitution for noneconomic damages under section 1202.4, subdivision (f)(3)(F) as well as a restitution fine under section 1202.4, subdivision (b)(1).  We order the judgment modified in certain respects but otherwise affirm.

## I.  BACKGROUND

---

[1] Further statutory references are to the Penal Code unless otherwise indicated.

1

Appellant was married to Jane Doe II's mother and began molesting Jane Doe II in 2010, when she was in the third or fourth grade. The first act of abuse occurred when he exposed "his privates" to her; he then started putting his penis "on" her vagina and in her "bottom" on multiple occasions. At about the same time, appellant began hitting Jane Doe II with his hands and with his shoes. He told her not to tell anybody about the sexual abuse because he would go to jail and lose everything. Jane Doe II was very afraid and believed that if she disclosed the abuse she and her siblings would not be able to live with their mother.[2]

Appellant lived with Jane Doe I's mother beginning in 2014. When Jane Doe I was in the sixth grade, appellant began molesting her. He raped her on five occasions and threatened to harm Jane Doe I's mother if Jane Doe I disclosed the rapes. Jane Doe I had seen appellant hit her mother several times. She did not initially tell her mother about the rapes because she believed her mother preferred appellant to her, but at some point after the third rape her mother asked her if she was having anything to do with appellant. Jane Doe I disclosed the sexual abuse and her mother had her take a pregnancy test. Jane Doe I's mother argued with appellant and he left the apartment, but he returned later that day.

---

[2] Jane Doe II eventually disclosed the abuse to a teacher, and charges were brought but dismissed before trial. Those charges were refiled by the prosecution in this case after Jane Doe I came forward.

The last time appellant raped Jane Doe I was in a bedroom of the family home after he and her mother came home from a party. Afterwards, appellant went to the bathroom, and Jane Doe I's mother entered the bedroom and asked what Jane Doe I was doing with appellant. When Jane Doe I did not answer, her mother hit her. Appellant returned to the bedroom and hit the mother's head against the wall. Jane Doe I called an aunt who called the police.

Appellant was tried before a jury and was convicted of five counts of aggravated sexual assault on a child by rape under section 269, subdivision (a)(1) (counts 1, 4, 6, 9 & 11), two counts of aggravated sexual assault on a child by sexual penetration under section 269, subdivision (a)(5) (counts 13 & 15), two counts of aggravated sexual assault on a child by oral copulation under section 269, subdivision (a)(4) (counts 17 & 19), and eleven counts of forcible lewd conduct with a child under 14 under section 288, subdivision (b)(1) (counts 2, 3, 5, 7, 8, 10, 12, 14, 16, 18 & 20). Counts 1 through 8 involved Jane Doe I; counts 9 through 20 involved Jane Doe II. The jury also found One Strike multiple victim allegations true under section 661.61, subdivisions (e) and (j)(2).

The court sentenced appellant to prison for an aggregate term of 215 years to life, consisting of consecutive 25-year-to-life terms under the One Strike law for the forcible lewd conduct convictions in counts 2, 7, 10, 12, 14, 16, 18 and 20, and a consecutive 15-year-to-life term for the aggravated sexual assault

3

conviction in count 4, with sentence stayed under section 654 on the remaining counts.

The court imposed a restitution fine of $64,500 under section 1202.4, subdivision (b)(1) and a parole revocation fine of $300 under section 1202.45, along with certain fees. The fines and fees were stayed because the court found appellant had an "inability to pay and lack of resources." Restitution in the amount of $4,815 was ordered to be paid to the Restitution Fund to compensate it for amounts paid to Jane Doe II. The court awarded $200,000 in direct victim restitution to Jane Doe I and $250,000 to Jane Doe II under section 1202.4, subdivision (f)(3)(F).[3]

## II. DISCUSSION

### A. *Restitution for Noneconomic Damages*

#### 1. Section 1202.4, subd. (f)(3)(F)

Section 1202.4, subdivision (f), provides in pertinent part that "the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." A defendant is entitled to a hearing to "dispute the determination of the amount of restitution," with the standard of proof at a restitution hearing being preponderance of the evidence, not beyond a reasonable

---

[3] A victim's entitlement to direct restitution is not affected by a defendant's inability to pay. (*People v. Evans* (2019) 39 Cal.App.5th 771, 777.)

4

doubt. (§ 1202.4, subd. (f)(1); *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.)

Section 1202.4, which implements a victim's state constitutional right to direct restitution (Cal. Const., art. I, § 28), is with one exception limited to the victim's economic damages. (*People v. Smith* (2011) 198 Cal.App.4th 415, 431 (*Smith*).) That exception is contained in section 1202.4, subdivision (f)(3)(F), which allows direct victim restitution for "[n]oneconomic losses, including but not limited to, psychological harm, for felony violations of Section 288, 288.5, or 288.7." (§ 1202.4, subd. (f)(3)(F); see *Smith* at p. 431.)

2. <u>Right to Jury Trial</u>

Defendant contends he was entitled to a jury trial to determine the amount of the victims' noneconomic loss based on proof beyond a reasonable doubt. To support this proposition, defendant relies on *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny. We disagree.

In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490.) "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (*Blakely v. Washington* (2004) 542 U.S. 296, 303, italics omitted.)

5

The principle of *Apprendi* applies to criminal fines. (*Southern Union Company v. United States* (2012) 567 U.S. 343, 346.)

Setting aside that section 1202.4 specifies no statutory maximum for noneconomic restitution, the main premise of appellant's argument—that noneconomic restitution constitutes increased punishment—is incorrect. Direct restitution is not a "fine" and is not "punishment." The primary purpose of direct victim restitution under section 1202.4 is to compensate victims of crime for their losses so that they do not need to file separate civil suits. (§ 1202.4, subd. (a)(3)(B) [victim restitution "shall be enforceable as if the order were a civil judgment"]; *People v. Pangan* (2013) 213 Cal.App.4th 574, 585 (*Pangan*); *People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1183–1184 (*Chappelone*).) Thus, courts have repeatedly held that the rule of *Apprendi* does not apply to direct victim restitution. (*Pangan*, at p. 585; *Chappelone*, at pp. 1183–1184; *People v. Millard* (2009) 175 Cal.App.4th 7, 35–36.)

Appellant tries to distinguish the above cases by arguing that they involved economic rather than noneconomic restitution. The court in *Smith, supra,* 198 Cal.App.4th at page 415 rejected this argument, squarely holding that "a restitution order for noneconomic damages does not give rise to a jury trial right" and that " 'the preponderance of the evidence standard satisfies due process.' " (*Smith*, at p. 433.) As *Smith* reasoned, "there is no basis for distinguishing jury trial rights, or lack thereof, for restitution orders for economic damages and restitution orders for noneconomic damages. In both cases, the trial court is

6

performing a task that, in a civil case, a jury would perform." (*Ibid*.) Appellant was not constitutionally entitled to a jury determination based on proof beyond a reasonable doubt of the amounts of noneconomic victim restitution.

### 3. Equal Protection

Appellant argues that section 1202.4, subdivision (f)(3)(F) violates equal protection principles because it applies only to defendants convicted under sections 288 (lewd conduct with a child), 288.5 (continuous sexual conduct with a child), or 288.7 (rape or sodomy of a child under 10). Although the People argue that appellant has forfeited this claim by failing to object below, the argument presents a facial challenge to the statute, i.e., a claim that presents a pure question of law that we can resolve on appeal without reference to the particular sentencing record developed in the trial court. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 884–889.)

That said, the claim fails on the merits. "When an equal protection case does not involve a suspect classification such as race and does not infringe on a fundamental right, the legislative classification will be upheld whenever it has a rational relationship to a legitimate state interest." (*People v. Parker* (2006) 141 Cal.App.4th 1297, 1309.) As the court recognized in *Smith*, *supra*, 198 Cal.App.4th at page 435, section 1202.4, subdivision (f)(3)(F) is subject to the rational relationship standard and there is no equal protection violation because it satisfies that standard by serving a legitimate state interest: "Differentiating between child victims and other victims is

7

rational based on the vulnerability of children in general and society's interest in protecting children." The Legislature could rationally determine that sexual offenses against children routinely lead to noneconomic damages and that child victims should be able to recover those damages without undergoing the trauma of a civil trial, which would be uniquely stressful to victims of sexual crimes.

In claiming that section 1202.4, subdivision (f)(3)(F) serves no rational purpose, appellant argues it does not treat all child victims of sexual abuse the same because the noneconomic loss provision of section 1202.4 does not apply to all sex crimes involving child victims. Appellant submits there is no rational basis for allowing victims of lewd conduct to recover noneconomic damages as restitution while a child victim of rape, sexual penetration or sodomy would not be able to recover noneconomic restitution for that crime. We disagree with the premise that child victims of such crimes are not entitled to noneconomic restitution.

Courts have concluded that the noneconomic restitution provision applies to acts that *violate* section 288, even if the defendant is *convicted* of a different offense. (*People v. Lee* (2018) 24 Cal.App.5th 50, 58–59; *People v. McCarthy* (2016) 244 Cal.App.4th 1096, 1103–1108; *People v. Martinez* (2017) 8 Cal.App.5th 298, 305–306; but see *People v. Valenti* (2016) 243

Cal.App.4th 1140, 1179–1180 (*Valenti*).)[4]  Section 288 prohibits

committing "any lewd or lascivious act, including any of the acts

constituting other crimes provided for in Part 1, upon or with the

body, or any part or member thereof, of a child" "with the intent

of arousing, appealing to, or gratifying the lust, passions, or

sexual desires of that person or the child."  (§ 288, subds. (a); see

*id.*, subds. (b)(1), (b)(2), (c)(1), (c)(2).)

It will be an unusual case in which a defendant convicted of

sexual offenses such as rape, sodomy or sexual penetration

against a child will not also, as factual matter, "violate" section

288 within the meaning of section 1202.4, subdivision (f)(3)(F).

(See *People v. Gonzalez* (2012) 211 Cal.App.4th 132, 137.)  Thus,

even when a defendant convicted of such offenses is not also

charged with and convicted of section 288 (see, e.g., *People v.*

*Mejia* (2007) 155 Cal.App.4th 86, 99–100 [defendant convicted of

both rape and lewd conduct against the same victim]), the victim

would be entitled to noneconomic restitution in the vast majority

of cases.  The Legislature could reasonably conclude that section

1202.4, subdivision (f)(3)(F) would allow most child victims of

sexual offenses against their person to recover noneconomic

---

[4] Courts have reached this conclusion in the context of holding that a conviction of continuous abuse of a child under section 288.5 could support a claim for noneconomic restitution under a former version of section 1202.4, subdivision (f)(3)(F) that referred only to violations of section 288 and did not specifically refer to section 288.5.  Section 1202.4, subdivision (f)(3)(F) has since been amended to expressly make noneconomic damages available as restitution for violations of section 288.5 and 288.7 in addition to section 288.  (Senate Bill 756 (2017–2018 Reg. Sess.).)

damages as restitution. For this reason, we are unpersuaded by appellant's reliance on *People v. Hofsheier* (2006) 37 Cal.4th 1185, 1199–1207, which in any event has been overruled in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888.

Even if there are some cases in which a defendant convicted of a sexual offense against a child is not subject to noneconomic damages as a component of restitution, that does not render section 1202.4, subdivision (f)(3)(F) arbitrary or irrational. "When conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. A classification is not arbitrary or irrational simply because there is an 'imperfect fit between means and ends.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 77.) And although appellant notes in his reply brief that child victims of violent nonsexual offenses are not entitled to noneconomic damages as restitution, such victims are not similarly situated to victims of sexual offenses. (See *People v. Reynolds* (1984) 154 Cal.App.3d 796, 815.)

The noneconomic loss provision of section 1202.4 passes the rational basis test and does not violate equal protection. (*Smith, supra*, 198 Cal.App.4th at p. 435.)

4. Abuse of Discretion

Appellant alternatively contends the trial court abused its discretion in awarding $200,000 to Jane Doe 1 and $250,000 to Jane Doe II because the court did not indicate what methodology it was using to calculate the award and the record was devoid of any victim impact information. We reject the claim.

10

We review the amount of restitution ordered for abuse of discretion.  (*Smith*, *supra*, 198 Cal.App.4th at p. 435; *People v. Lehman* (2016) 247 Cal.App.4th 795, 801 (*Lehman*).)  Like the calculation of noneconomic damages in civil cases, and unlike the calculation of *economic* losses in direct restitution hearings, such damage cannot be readily quantified.  (*Ibid*.; see Civ. Code, § 1431.2, subd. (b)(2); CACI No. 3905A.)  Accordingly, courts apply a standard similar to that employed when reviewing jury verdicts awarding noneconomic damages, under which no abuse of discretion will be found where there is a rational basis for the award and the amount does not "shock the conscience" or demonstrate passion, prejudice, or corruption.  (*Smith* at p. 436; *Lehman* at p. 803.)

When awarding restitution, the court noted that it was considering the trial testimony of both victims as well as their demeanor, observing that it had "viewed firsthand the emotional distress that each of the girls was suffering at the time of this trial. . . which I know . . . was some almost 2 years after the most recent incident [as to Jane Doe I], and as to Jane Doe II, some 8 years after her most recent incident."  It stated that Jane Doe II had participated in ongoing therapy and that Jane Doe I had been the subject of a dependency proceeding and her relationship with her mother had been "vastly affected."  The court noted that the acts against Jane Doe I had occurred over a six-to-seven-month period of time and the acts against Jane Doe II had been committed over a three-year period.  It acknowledged the *Smith* case, in which the court affirmed an award of $750,000

11

in noneconomic restitution based on a formula of $50,000 per year (*Smith, supra,* 198 Cal.App.4th 436), and further acknowledged that another published decision had disapproved a similar formula based on different facts. (See *Valenti, supra,* 243 Cal.App.4th at pp. 1181–1184 [People agreed that *Smith* formula of $50,000 per year not adequate basis for restitution where acts of abuse were much milder and victims were reported to be doing well].)

Considering all of these factors, and given the severity of the conduct in this case, the awards of $200,000 and $250,000 do not shock the conscience. Appellant was a father figure who violated the trust of both victims by forcibly raping them repeatedly, sometimes becoming violent. The violation of trust experienced by Jane Doe I as a result of the sexual assaults extended to her mother, who knew about appellant's conduct but allowed him to continue living in their home. Appellant threatened both victims and hit Jane Doe II many times.

Appellant notes the prosecutor did not present any testimony, other evidence, or statements by the victims at the sentencing hearing at which restitution was ordered. "[S]ection 1202.4 does not require any particular kind of proof to establish the victim's losses." (*Lehman, supra,* 247 Cal.App.4th at p. 803.) The court did not abuse its discretion in setting direct noneconomic restitution.

B. *Restitution Fine*

Appellant argues the court erred by imposing and then staying a $64,500 restitution fine, which exceeded the $10,000

12

maximum that may be imposed in any case. (§ 1202.4, subd. (b)(1).) He also notes the court erred by imposing a $300 parole revocation fine because it did not match the amount of the restitution fine. (§ 1202.45, subd. (a).) The People agree.

Appellant argues the case must be remanded because the record does not reflect the amount the court would have imposed if it had been aware of the maximum amount of the fine. Again the People agree. However, we do not accept the concession that remand is the appropriate remedy. The court here decided to stay any fine imposed based on appellant's inability to pay. The People concede that any error in imposing the stay has been forfeited on appeal by their failure to object, so we have no occasion to consider whether it was appropriate. Given all of the circumstances, it would be judicially uneconomical to remand the case. (*People v. Vasquez Diaz* (1991) 229 Cal.App.3d 1310, 1316 [imposing minimum fine in case where remand was uneconomical].) We will therefore order that the judgment be modified to impose and stay the minimum fine of $300. This is the same amount as the parole revocation fine under section 1202.45 and will obviate the problem of the parole revocation fine being for a different amount than the restitution fine.

C. *Abstract of Judgment*

Appellant was convicted in counts 1, 4, 6, 9, 11, 13, 15, 17 and 19 of aggravated sexual assault of a child under section 269. The abstract cites to both section 269 and the code sections defining the elements of rape, oral copulation, and sexual penetration, the offenses which underlie the section 269

13

violations. Appellant contends the abstract is inaccurate because it gives the impression that he was convicted of "two or three statutes" in each count, rather than a single violation of section 269. The People concede that this is erroneous and must be corrected.

Although we question whether the abstract is actually erroneous, a new abstract of judgment must be prepared when the court modifies the restitution fine. To avoid any confusion on this point, when the court modifies the abstract it should refer only to section 269 and its appropriate subdivision on the disputed counts.

## III. DISPOSITION

The restitution fine under section 1202.4, subdivision (b)(1) is modified to $300 and stayed. The abstract of judgment shall be modified to refer exclusively to section 269, subdivision (a)(1) on counts 1, 4, 6, 9 and 11; to section 269, subdivision (a)(5) on counts 13 and 15, and to section 269, subdivision (a)(4) on counts 17 and 19, and to delete the references to the underlying statutes. The judgment, including the order awarding direct victim restitution, is otherwise affirmed.

_____

NEEDHAM, Acting P.J.

We concur.

_____

BURNS, J.

_____

RODRIGUEZ, J. *

_____

     * Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Cruz* / 157823